## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SUSAN DILLARD McKEY**                    **CIVIL ACTION NO.**

**versus**                                 **JUDGE**

**ROBERTA ZENO AUGUST IN**                 **MAGISTRATE JUDGE**
**HER INDIVIDUAL CAPACITY,**
**ST. JOHN THE BAPTIST**
**PARISH LIBRARY BOARD,**
**ST. JOHN THE BAPTIST PARISH**
**SHERIFF'S OFFICE**

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

## COMPLAINT

**NOW INTO COURT**, through her undersigned counsel, comes the Plaintiff, Susan

Dillard McKey, who respectfully represents as follows:

### JURISDICTION AND VENUE ALLEGATIONS:

1.

This court has subject-matter jurisdiction herein pursuant to 28 U.S.C. §§ 1331 and 1343.

This is an action for damages arising under 42 U.S.C. § 1981(a) against the Defendant, Roberta

August, and an action for damages arising under 42 U.S.C. § 1983 against the Defendant, St.

John the Baptist Parish Library Board. This court has supplemental jurisdiction over the

Plaintiff's state law claims in accordance with 28 U.S.C. § 1367 as to the breach of contract and

denial of due process claims against the Defendant, St. John the Baptist Parish Library Board and

the false arrest/imprisonment claims against the Defendant, St. John the Baptist Parish Sheriff's

Office.

2.

Venue is appropriate in the United States District Court for the Eastern District of Louisiana, pursuant to 28 U.S.C. § 1391(b), in that the Defendants are located within this district, and the events that give rise to this action occurred in this district.

3.

The Plaintiff, Susan Dillard McKey, is a person of the full age of majority and a citizen and resident of St. John the Baptist Parish, state of Louisiana.

4.

The first named defendant herein is Roberta Zeno August, a resident of the full age of majority of St. John the Baptist Parish, State of Louisiana, who is sued herein in her individual capacity. Roberta Zeno August was the former Director of St. John the Baptist Parish Library.

5.

The second named defendant herein is the St. John the Baptist Parish Library Board, the governing board of the St. John the Baptist Parish Library established by St. John the Baptist Parish Council pursuant to La. R.S. 25:211, *et seq*. and located in St. John the Baptist Parish, state of Louisiana.

6.

The third named defendant herein is the St. John the Baptist Parish Sheriff's Office, located in St. John the Baptist Parish, state of Louisiana.

## FACTUAL ALLEGATIONS:

7.

Mrs. McKey earned a Masters of Library Science at Louisiana State University in 1978 and was certified by the Louisiana State Board of Library Examiners in 1979.  Her certification has been renewed as required and is current.

8.

Mrs. McKey began employment as Assistant Director of the St. John the Baptist Parish Library ("Library") on July 1, 1986. At all times while employed by St. John the Baptist Parish Library, Mrs. McKey was a dedicated employee who performed her job diligently and with her employer's best interests in mind. She received good to excellent performance evaluations from the start of her employment through 2013.

9.

In 2013, Mrs. McKey began to be harassed by certain African-American administrative employees at the Library. Mrs. McKey was constantly being questioned about every little action of the Caucasian employees who worked under her supervision. For example, Mrs. McKey was warned about the Caucasian employees talking on the phone for too long, taking too long at lunch, and other trivial matters that she had not been warned about in the past. African-American employees in the department were never scrutinized for the same or similar actions.

10.

In September 2013, Mrs. McKey elected to enter the DROP program available because of her participation in the Parochial Employee's Retirement System of Louisiana ("state retirement system"). Mrs. McKey chose to enter DROP because of an increasingly contentious work environment at the Library. In order for Mrs. McKey to be eligible for the DROP program, she

had to pay thirty-two thousand dollars ($32,000.00) to buy needed retirement credit, which she did.

11.

Upon entering DROP, Mrs. McKey had fully vested in her retirement and was considered retired by the state retirement system.

12.

Under the rules, regulations of the retirement system, Mrs. McKey could participate in the DROP program for up to 36 months. She expected to complete DROP in September 2016. Mrs. McKey intended to complete the DROP program in September 2016 and was scheduled to fully retire at that time as well.

13.

On November 14, 2013, Ingrid Depland, an African-American library employee, filed a baseless grievance against Mrs. McKey regarding Mrs. McKey's yearly evaluation of her (Depland's) performance. This matter was investigated by Ms. Tammy Houston, Library Human Resources employee. Ms. Houston reported to Randy De Soto, the Library Director, that she felt that Mrs. McKey showed favoritism to two (2) Caucasian employees in the Technical Services Department. However, there was no finding of discrimination towards any African-American employees, including Mrs. Depland. While Mrs. McKey may have treated the two (2) Caucasian employees differently, it was only because they had significantly more experience in that department.

14.

On April 30, 2014, Mrs. Depland and Karen Tassin, another African-American library employee, filed another baseless grievance against Mrs. McKey. On May 12, 2014, Mrs. McKey

sent a rebuttal letter to Mr. De Soto in regard to the false allegations by Mrs. Depland and Mrs. Tassin. In her response letter, Mrs. McKey reported the issues of "conflict and hostility" in the workplace due to the actions of Mrs. Depland and Mrs. Tassin. In her rebuttal letter, Mrs. McKey answered each of the accusations in the grievance and gave her legitimate non-discriminatory reasons for her assignments of job duties. Mrs. McKey requested to talk with Mr. De Soto in private about the issues discussed in her letter.

15.

On May 12, 2014, the same day that Mrs. McKey sent her rebuttal letter, Mr. De Soto scheduled a meeting regarding the second grievance filed by Mrs. Depland and Mrs. Tassin. At this meeting, in the presence of Mrs. McKey's subordinates, Library Director Randy De Soto and Ms. Tammy Houston openly berated Mrs. McKey for her actions as supervisor. Furthermore, Mrs. Depland and Mrs. Tassin were given an opportunity to read Mrs. McKey's rebuttal letter, which caused Mrs. McKey a great deal of anxiety. In her rebuttal letter, Mrs. McKey had discussed specifics about Mrs. Depland and Mrs. Tassin as employees. Mrs. McKey did not feel that it was appropriate for one employee to read her evaluations. It was Mrs. McKey's understanding that this was against Library policy. Mrs. McKey was concerned that the workplace hostility would worsen.

16.

Throughout 2013 and 2014, Mrs. McKey was subjected to a racially hostile environment at the Library. During this time, Mrs. McKey had conversations with supervisors about the hostile work environment. However, Mrs. McKey was never supported by her supervisors, even though they were aware of the hostile environment. Mrs. McKey's supervisors took no action to protect Mrs. McKey or other employees who were subject to the racially hostile environment.

17.

Due to the hostility and harassment that Mrs. McKey was enduring at the Library from the African-American employees, she began to experience significant stress and anxiety, which aggravated already existing health issues, including high blood pressure, depression, and sleep apnea.

18.

Roberta Zeno August, an African-American, became the Library Director on June 20, 2014.

19.

Under the new Director, in November 2014, Mrs. Depland filed another baseless grievance against Mrs. McKey. On November 25, 2014, Mrs. McKey sent a rebuttal letter to Mrs. August, which addressed the allegations that were being made against her by Mrs. Depland. In Mrs. McKey's rebuttal letter, she requested that Mrs. Depland be transferred to another work assignment because the employee was harassing Mrs. McKey due to her race.

20.

This was another example of the racially hostile environment to which Mrs. McKey was being subjected at the Library. Mrs. McKey's efforts to diffuse this hostile work environment were unsuccessful as the Library Director took no action to protect Mrs. McKey or other employees from this racially hostile work environment.

21.

On December 4, 2014, Mrs. McKey sent a letter to Mrs. August requesting a copy of the third grievance that was filed by Mrs. Depland. However, Mrs. McKey was never provided a copy of the third grievance.

22.

On December 4, 2014, Mrs. August issued a written warning to Mrs. McKey as a result of the third grievance filed against her by Mrs. Depland. Consequently, Mrs. August removed Mrs. McKey as Head of Technical Services. Mrs. McKey had been Head of Technical Services for about 10-12 years and her duties as Head of Technical Services constituted her primary duties as Assistant Director. Mrs. August, herself, replaced Mrs. McKey in the performance of the duties as Head of Technical Services.

23.

This adverse action caused Mrs. McKey to experience additional stress and anxiety.

24.

Even though Mrs. McKey had been removed from her position as Head of Technical Services due to the grievances filed by Mrs. Depland, she still had daily contact with Mrs. Depland. As such, the hostile work environment remained. This also caused Mrs. McKey to experience additional stress and anxiety since Mrs. McKey was fearful of being falsely accused another baseless grievance.

25.

In order to reduce the hostility of the work environment in the Library, Mrs. McKey made extra efforts to converse with Mrs. Depland about common interests, such as cooking. However, Mrs. McKey's good faith efforts were to no avail as the hostility within the Library did not decrease.

26.

On April 8, 2015, Mrs. McKey fell asleep at her desk due to her sleep apnea. On April 10, 2015, Mrs. August issued Mrs. McKey a second written warning for falling asleep at her

desk. On April 17, 2015, Mrs. McKey presented Mrs. August with a letter from her treating physician confirming that she suffered from sleep apnea. Despite this information from her physician, the second written warning was not removed from Mrs. McKey's personnel file.

27.

In April of 2015, Mrs. August and Ms. Tammy Houston had discussions with Mrs. McKey regarding potential changes in her job duties as Assistant Director. During these discussions, Mrs. McKey expressed some concerns regarding the proposed changes, but at no time did she ever refuse to do any of the new duties that were being proposed. During these discussions, Mrs. McKey also spoke with Mrs. August in private regarding her (McKey's) concerns that Ms. Houston, an African-American, was trying to interfere with her (McKey's) job performance.

28.

On April 29, 2015, Mrs. McKey was demoted from her position as Assistant Director to the position of Cataloger/Acquisitions Librarian with a decrease in salary. This decrease in Mrs. McKey's salary violated a written library policy, which states that salaries cannot be reduced even if there is a change of job duties.

29.

Mrs. McKey was demoted for the purported reason that she refused to assume different job duties as the Assistant Director, which was untrue. Mrs. McKey never stated she would not perform the job duties as requested. Instead, in the earlier meeting regarding the proposed changes in Mrs. McKey's job duties, Mrs. McKey simply expressed concerns regarding the new job duties.

30.

After twenty-eight (28) years as the Assistant Director, this demotion was humiliating and greatly increased her stress, anxiety, and negatively impacted her health conditions. Again, even though Mrs. McKey was demoted to a subordinate position, she was still going to have to work with the same employee, Mrs. Depland, who had filed repeated baseless grievances against her.

31.

Within a short time after Mrs. McKey's demotion, Ms. Houston assumed the title of Assistant Director.

32.

At a Library Board meeting on Monday, May 4, 2015, Mrs. August informed the Library Board of her intention to resign as Library Director effective August 2015. It was also discussed at this meeting whether or not the Assistant Director position, formerly occupied by Mrs. McKey, required a Master's Degree in Library Sciences as a qualification. Ms. Houston, an African-American, was employed by the Library at this time as a Human Resources employee. Ms. Houston did not have a Master's Degree in Library Sciences. Ms. Houston's master's degrees was in public administration. After consultation with the State Library of Louisiana, the Library Board changed the qualifications for the Assistant Director position so that they required either a Master's Degree in Library Sciences, or equivalent. Subsequently, in September 2015, Miss Houston was officially promoted to the position of Assistant Director, replacing Mrs. McKey.

33.

In the evening of April 29, 2015, Mrs. McKey partially cleaned out her office due to her demotion and because she intended to request an extended medical leave due to her own serious health condition. In cleaning out the office, Mrs. McKey removed some of her personal belongings and some copies of documents from her office.

34.

On May 4, 2015, Mrs. McKey submitted a library leave form requesting a three (3) month leave of absence (May 1 – July 31, 2015) due to her own severe medical conditions that had been significantly negatively impacted by the racially hostile work environment at the Library and the adverse actions taken against Mrs. McKey. Mrs. McKey submitted a letter from her physician with this request form verifying the medical necessity for her leave.

35.

Mrs. McKey had enough accumulated sick and vacation leave to cover the requested absence. However, on May 5, 2015, Mrs. McKey received FMLA forms from the Library by certified mail and was told she was required to file for FMLA leave if she was going to be off for three (3) months, despite the fact that she had sufficient sick and vacation leave to cover the requested absence.

36.

On May 7, 2015, Mrs. August sent a letter to Mrs. McKey demanding that she bring back items that she allegedly took from her office by May 13, 2015. The letter stated that the authorities would be contacted if she failed to comply. Mrs. McKey received the letter on May 12, 2015. On May 13, 2015, at 10:00 A.M., Mrs. McKey returned all of the items that were requested by Mrs. August, except Mrs. McKey's personal belongings. After returning these

items, Mrs. McKey sent a certified letter to Mrs. August detailing the items that she had returned to the office. Mrs. McKey also enclosed pictures of her personal belongings that she did not return on May 13, 2015. Mrs. McKey also reiterated in this letter that she was not leaving the library, but had been cleaning out her office to make room for her replacement. Mrs. McKey also indicated in her letter that she had been unable to login to her work computer on May 3, 2015 and that it appeared that she was locked out of the system.

37.

On May 14, 2015, the day after returning the requested items to the Library, Mrs. McKey contacted Mrs. August to offer her assistance with the Library's annual report as the Library was facing an impending deadline. However, Mrs. August informed Mrs. McKey that she could not return to work since it would go against her doctor's orders.

38.

On May 19, 2015, while Mrs. McKey was on approved medical leave, Mrs. August contacted Mrs. McKey and demanded that she attend a meeting at the Library on May 20, 2015 with Mrs. August and Ms. Houston. Mrs. McKey asked if she could have a witness present during this meeting and Mrs. August responded that she could not. At this time, Mrs. McKey declined to meet with Mrs. August and Ms. Houston unless she could have a witness present and until she could speak with her attorney. Additionally, Mrs. McKey was out-of-state at that time at a family function for which she had sought and received approved leave in January 2015. Mrs. August and Ms. Houston were aware that Mrs. McKey had previously made plans to be out-of-state at this time. Additionally, Mrs. August knew that it was difficult for Mrs. McKey to respond timely while she was out-of-town at her family home because she had bad cellular phone reception in that area.

39.

On May 27, 2015, while on approved leave, Mrs. McKey received written notice that her employment and health insurance benefits had been terminated.

40.

In the May 27, 2015 notice, Mrs. August states that Mrs. McKey was terminated because she refused to meet with her and Ms. Houston. As discussed hereinabove, Mrs. McKey never refused to meet with Mrs. August and Ms. Houston. Instead, Mrs. McKey just told Mrs. August that she would not meet with them unless she had a third party with her and had an opportunity to speak with her attorney.

41.

Mrs. McKey was informed that her group health, dental and life insurance benefits for her and her family had been cancelled by the library effective June 30, 2015.

42.

Following her termination, Mrs. McKey was contacted by the Library who informed her that it was necessary for her to complete the necessary retirement document in order for her to begin receiving her retirement benefits. Mrs. McKey completed the necessary retirement documentation so that she could receive her retirement benefits and Drop distribution. Continuing family health insurance coverage is a benefit for all retired employees of St. John the Baptist Parish. Mrs. McKey's forwarded this paperwork to her employer.

43.

At the time of her termination, Mrs. McKey had fully vested in her retirement benefits. Accordingly, Mrs. McKey received her retirement benefits through the state retirement system.

However, Mrs. McKey's continuing family health insurance coverage from St. John the Baptist Parish was denied because her employer characterized her separation as a termination.

44.

During the process of trying to obtain her retirement benefits, Mrs. McKey's attorney was informed that the Library might be conducting a criminal investigation into her alleged taking of documents from the Library.

45.

On July 2, 2015, Tammy Houston made a report of a crime allegedly committed by Mrs. McKey with the St. John the Baptist Parish Sheriff's Office. A Sheriff's Deputy was dispatched to the Library and met with Roberta August who claimed that Mrs. McKey allegedly took documents belonging to the Library and deleted files from her Library computer.

46.

On July 6, 2015, Lieutenant Richard Dubus was assigned to investigate the alleged removal of items from the St. John the Baptist Parish Library. On July 10, 2015, Lieutenant Dubus contacted the complainant, Roberta August, and they scheduled a meeting on July 15, 2015. On July 15, 2015, Lieutenant Dubus met with Mrs. August, Ms. Houston, Assistant Director, and IT Director, Edward Sims. At this meeting, Mrs. August informed Lieutenant Dubus that Mrs. McKey took documents belonging to the Library.

47.

The list of documents belonging to the Library provided by Mrs. August was put into Lt. Dubus' report. This list, however, does not contain a listing of public records that Mrs. McKey took from the Library, but instead lists documents that allegedly should have been in Mrs. McKey's office after she left, but allegedly were not there. Furthermore, upon closer

13

examination, this list does not even contain a listing of documents at all, but instead contains a listing of file names from Mrs. McKey's office, such as "Memorandums (2009-2010)", which Mrs. August found empty upon examination of Mrs. McKey's office.

48.

On July 22, 2015, Mr. Sims informed Lieutenant Dubus that files were deleted from Mrs. McKey's computer on a date and time that allegedly coincided with her April 29, 2015 visit to the Library.

49.

At no time during Lieutenant Dubus' investigation of this matter was there ever a discussion of whether the documents allegedly taken and/or deleted by Mrs. McKey were public records subject to retention. Instead, it was assumed, without any reasonable basis, that the documents allegedly taken or deleted by Mrs. McKey were public records subject to retention simply because they were documents allegedly removed from her office at the Library. Mrs. McKey was still an active Library employee on the date that she allegedly removed these documents from her office at the Library and had the authority to utilize these documents and to make copies of them.

50.

On or about August 5, 2015, Mrs. McKey's attorney was contacted by Lieutenant Dubus and informed that an arrest warrant for Mrs. McKey's arrest had been issued. Arrangements were made for Mrs. McKey to report to Lieutenant Dubus at the St. John the Baptist Parish Jail for arrest and processing. On August 5, 2015, Mrs. McKey was falsely arrested and charged under La. R.S. 14:132 for Injuring Public Records, a felony.

51.

These criminal charges related to actions allegedly taken by Mrs. McKey while she was still an employee of the Library. Additionally, Mrs. McKey had returned all library documents that were requested by Mrs. August prior to Ms. Houston's June 2, 2015 report to the Sheriff's Office.

52.

The criminal charges against Mrs. McKey were initiated by Mrs. August, who had terminated Mrs. McKey's employment just prior to making her accusations of criminal conduct, and Ms. Houston, who had replaced Mrs. McKey.

53.

In December 2015, Mrs. August resigned as Library Director. Following the appointment of Natalie D. Beam, a Caucasian, as Library Director, Ms. Houston was terminated from her position as Assistant Director. However, Ms. Houston, an African-American, was shown favorable treatment following her termination and was reinstated as Assistant Director by the St. John the Baptist Parish Library Board.

**PLAINTIFF'S 42 U.S.C. § 1981(a) CAUSES OF ACTION:**

54.

The Plaintiff reasserts the allegations of paragraphs 7-54 in support of her claims for monetary damages against the Defendant, Roberta Zeno August, in her individual capacity, for violations of 42 U.S.C. § 1981(a).

55.

At all times relevant hereto, the Plaintiff had a valid and enforceable employment contract with the St. John the Baptist Parish Library.

56.

At all times relevant hereto, the actions and inactions of Roberta Zeno August were taken pursuant to her independent authority as Library Director to demote/terminate the Plaintiff on her own.

**Hostile Work Environment:**

57.

By 2013 and continuing until her termination, the Plaintiff, a Caucasian, endured a hostile work environment as the Library workplace was permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe and/or pervasive to alter the conditions of the Plaintiff's employment and create an abusive working environment.

58.

The Defendant, Roberta Zeno August, knew, or at a minimum should have known, of the harassment and hostility in the workplace, but failed to take remedial action.

**Discriminatory Demotion and Termination:**

59.

At all times relevant hereto, the Plaintiff, a Caucasian, was qualified for the position of Assistant Director at the St. John the Baptist Parish Library.

60.

On December 4, 2014, Roberta Zeno August demoted the Plaintiff as Head of Technical Services as a result of a baseless grievances filed against the Plaintiff by Ingrid Depland, an African-American library employee. This was the third such baseless grievance filed against the Plaintiff by Ingrid Depland. This demotion resulted in a significant reduction in the Plaintiff's

job duties. Roberta Zeno August, an African-American, replaced the Plaintiff in the performance of the duties of Head of Technical Services.

61.

The Plaintiff's race was a motivating factor in the Plaintiff's December 4, 2014 demotion.

62.

Subsequently, on April 29, 2015, Roberta Zeno August demoted the Plaintiff from her position as Assistant Director to the position of Cataloger/Acquisitions Librarian with a decrease in salary. The Plaintiff was replaced as Assistant Director by Tammy Houston, an African-American who played a substantial role in fostering the hostile work environment at the Library and who also played a role in the Plaintiff's demotion to Cataloger/Acquisitions Librarian. Roberta Zeno August's reasons for the Plaintiff's demotion were false and pretext for race discrimination.

63.

The Plaintiff's race was a motivating factor in the Plaintiff's April 29, 2015 demotion.

64.

The Plaintiff was qualified for the position of Cataloger/Acquisitions Librarian. However, Mrs. McKey never worked in the position of Cataloger/Acquisitions Librarian because she took medical leave due to the stress and anxiety caused by the hostile work environment and her demotion.

65.

On May 27, 2015, while on approved leave, Mrs. McKey received written notice from Roberta Zeno August that her employment with the Library had been terminated. Roberta Zeno August's reasons for the Plaintiff's termination were false and pretext for race discrimination.

66.

The Plaintiff's race was a motivating factor in the Plaintiff's termination.

67.

Because of this discriminatory termination, the Plaintiff has suffered wage losses, loss of fringe benefits, and mental and emotional distress.

68.

The Plaintiff has also had to retain the services of an attorney as a result of her wrongful termination, and is entitled to recover the attorneys' fees, witness fees, and court costs she has already incurred and that she will continue to incur as this cause proceeds.

**PLAINTIFF'S CAUSE OF ACTION FOR THE BREACH OF CONTRACT AND DENIAL OF DUE PROCESS BY THE DEFENDANT, ST. JOHN THE BAPTIST PARISH LIBRARY BOARD:**

69.

The Plaintiff reasserts the allegations of paragraphs 7-54 in support of her claims for monetary damages against the Defendant, St. John the Baptist Parish Library Board, for its breach of contract and denial of due process.

70.

At all times relevant hereto, the Plaintiff had a valid and enforceable employment contract with the St. John the Baptist Parish Library.

71.

Per the terms of the Plaintiff's employment contract, she was eligible for retirement and had fully vested in her retirement benefits from St. John the Baptist Parish.

72.

However, pursuant to a clause of the Plaintiff's employment contract allowing for the divestiture of the Plaintiff's vested retirement benefits, the Defendant, St. John the Baptist Parish Library Board, acted in accordance with official policy and under color of state law to deny the Plaintiff her continued family health insurance coverage, a benefit for all retired employees of St. John the Baptist Parish that had been contractually promised to the Plaintiff. This action by the Defendant violated Louisiana state contracts law, Article I, § 10 of the United States Constitution and Article I, § 23 of the Louisiana Constitution, as well as the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article I, § 2 of the Louisiana Constitution.

73.

Because of this divestiture, the Plaintiff has suffered losses.

**PLAINTIFF'S CAUSE OF ACTION FOR FALSE ARREST/IMPRISONMENT BY THE DEFENDANT, ST. JOHN THE BAPTIST PARISH SHERIFF'S OFFICE:**

74.

The Plaintiff reasserts the allegations of paragraphs 7-54 in support of her claims for monetary damages against the Defendant, St. John the Baptist Parish Sheriff's Office, for its false arrest/imprisonment of the Plaintiff.

75.

On August 5, 2015, the Plaintiff was arrested and restrained against her will by the Defendant, St. John the Baptist Parish Sheriff's Office. This arrest was done without color of

legal authority as it was plainly evident from the application for arrest warrant and supporting documentation that no violation of La. R.S. 14:132 had occurred.

76.

In this case, the investigating and arresting officer, Lieutenant Dubus, was aware, or should have been aware, that the arrest warrant based on his application and investigation was unlawful as there was no indication that the Plaintiff had taken and/or deleted public records which were subject to retention. Instead, the only basis for the arrest warrant was that the Plaintiff had allegedly taken and/or deleted Library documents. This is insufficient to support a warrant for the felony arrest of the Plaintiff for La. R.S. 14:132.

77.

As a result of this false arrest/imprisonment, the Plaintiff suffered losses, including, but not limited to, attorney's fees and expenses associated with her criminal defense.

## JURY DEMAND

78.

The Plaintiff respectfully demands trial by jury on all issues triable by jury.

**WHEREFORE**, the Plaintiff, Susan Dillard McKey, respectfully prays for judgment in her favor and against the Defendants, Roberta Zeno August, St. John the Baptist Parish Library Board, and St. John the Baptist Parish Sheriff's Office, for such sums as are reasonable on the premises, including attorney's fees and expenses, with all costs, and legal interest thereon from the date of judicial demand, until paid.

**RESPECTFULLY SUBMITTED:**


 /s/ J. Arthur Smith, III_____
J. ARTHUR SMITH, III (La. Bar Roll #07730)
J. MURPHY DeLAUNE (La. Bar Roll #34512)
SMITH LAW FIRM
830 North Street
Baton Rouge, Louisiana 70802
Telephone: (225) 383-7716
Facsimile: (225) 383-7773
Email: jasmith@jarthursmith.com
        jdelaune@jarthursmith.com
*Attorneys for Plaintiff Susan Dillard McKey*