### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SUSAN DILLARD MCKEY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-13642-WBV-MBN**<br>**c/w 19-8033** |
| **ROBERTA ZENO AUGUST, ET AL.** | **SECTION: D (5)** |

### <u>ORDER AND REASONS</u>[1]

Before the Court is a Motion to Dismiss, filed by Tammy Houston, Roberto Zeno August, and the St. John the Baptist Parish Library Board (collectively, "Defendants").[2] Defendants seek to dismiss the Complaint filed by Susan Dillard McKey in Civ. A. No. 19-8033. McKey opposes the Motion,[3] and Defendants have filed a Reply.[4] During a January 30, 2020 Status Conference, the Court discussed the Motion with counsel, and allowed counsel to present additional arguments in support of their positions. After careful consideration of the parties' memoranda and the applicable law, as well as the arguments presented by counsel during the January 30, 2020 Status Conference, the Motion is **GRANTED.**

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This consolidated matter arises out of the 2016 civil rights lawsuit filed by McKey, a former employee of the St. John the Baptist Parish Library (the ""Library"),

---

[1] Unless otherwise indicated, all of the citations to the record in this Order and Reasons refer to documents filed in the master file of this consolidated matter, Civ. A. No. 16-13642.
[2] R. Doc. 119.
[3] R. Doc. 120.
[4] R. Doc. 125.

who alleges reverse racial discrimination and deprivation of continued family health insurance coverage without due process of law.[5]   In 2019, McKey filed a second lawsuit[6] alleging constitutional violations stemming from her termination, arrest, and prosecution for allegedly stealing Library documents and/or deleting certain files from her work computer without authorization.[7]   Because the instant Motion to Dismiss concerns the allegations in the Complaint filed in the 2019 lawsuit, the Court will limit its recitation of the procedural background to the facts of that case.

On April 3, 2019, McKey filed a Complaint in this Court, seeking damages under 42 U.S.C. § 1983 from Tammy Houston, Roberto Zeno August, and the St. John the Baptist Parish Library Board (the "Library Board") (collectively, "Defendants") for violating her federal constitutional rights by causing her termination and subsequent arrest and prosecution.[8]   McKey alleges that on May 27, 2015, she was terminated from her 29-year employment as the Assistant Director of the Library by August, the Director of the Library, who acted in concert with Houston, the Administrative Services Coordinator of the Library.   McKey asserts that on or about July 2, 2015, Houston and August made a false criminal report to the St. John the Baptist Parish Sheriff's Office (the "Sheriff's Office"), reporting that McKey "had stolen documents belonging to the Library and had injured public records of the Library."[9]   McKey alleges that on July 6, 2015, Lieutenant Richard Dubus of the

---

[5] *See*, R. Docs. 1 & 44.
[6] Plaintiff's first lawsuit, *Susan Dillard McKey v. August, et al*, Civ. A. No. 16-13642, is consolidated with this second case and remains pending.
[7] *See*, R. Doc. 1 at ¶¶ 10 & 24 in Civ. A. No. 19-8033, *McKey v. August, et al.*, (E.D. La.) ("*McKey II*").
[8] R. Doc. 1 in *McKey II*.
[9] *Id*. at ¶ 10.

Sheriff's Office was assigned to investigate the accusations, and that he met with Houston, August, and Edward Sims, the Library's Information Technology ("IT") Director, on July 15, 2015 in connection with the investigation.[10] McKey asserts that, upon information and belief, Houston and August told Dubus during that meeting that they wanted to press criminal charges against McKey "for essentially the same reasons for which she was terminated."[11]

McKey alleges that on or about August 5, 2015, the Sheriff's Office issued a warrant for her arrest and that she reported to the St. John the Baptist Parish Jail that same day and was arrested for violating La. R.S. 14:132(B), Injuring Public Records.[12] McKey alleges that Houston and August caused her termination and prosecution, both of which were racially motivated.[13] McKey also alleges that Houston and August took these actions even though they knew that McKey "had on May 13, 2015 at 10:00 a.m. returned all library documents that had been requested by Defendant August."[14] McKey alleges that on September 24, 2015, she was formally charged by the St. John the Baptist Parish District Attorney's Office (the "District Attorney's Office") with 51 felony counts of injuring public records, in violation of La. R.S. 14:132(B), and two felony counts of attempted criminal damage to property, in violation of La. R.S. 14:56, charges that she contends were "false, pretextual, and unfounded."[15] According to McKey, the prosecution's theory was that McKey had

---

[10] *Id*. at ¶¶ 11-13.
[11] *Id*. at ¶ 13.
[12] *Id*. at ¶ 14.
[13] *Id*. at ¶ 16.  McKey alleges that she is Caucasian and that Houston and August are African-American.  *Id*. at ¶ 17.
[14] *Id*. at ¶ 15.
[15] *Id*. at ¶ 22.

deleted certain files from her work computer and had moved them to the computer's recycle bin.[16] McKey claims the prosecution concluded three years later on November 8, 2017, when the 40th Judicial District Court for St. John the Baptist Parish determined that there was no probable cause for the 53 felony counts.[17] The District Attorney's Office subsequently dismissed the claims with prejudice via *nolle prosequi* on December 12, 2018.[18] McKey filed this lawsuit four months later on April 3, 2019, asserting four causes of action against Defendants: (1) a 42 U.S.C. § 1983 claim for malicious detention and prosecution without probable cause, in violation of the Fourth Amendment; (2) a § 1983 claim for violating the Equal Protection Clause of the Fourteenth Amendment, based on her racially motivated detention and prosecution; (3) a § 1983 claim for violating her rights to due process in the criminal proceeding by intentionally losing and/or destroying material evidence; and (4) a state law claim of malicious prosecution.[19]

Defendants filed the instant Motion to Dismiss on June 10, 2019, seeking to dismiss all of McKey's claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[20] McKey opposes the Motion, asserting that the Motion should be denied because she has alleged sufficient facts in support of each of her claims.[21] In response, Defendants maintain that the Motion should be granted.[22]

---

[16] *Id*. at ¶ 24.
[17] *Id*. at ¶ 27.
[18] *Id*. at ¶ 29.
[19] *Id*. at ¶¶ 32-35.
[20] R. Doc. 17 in *McKey II*; R. Doc. 119.
[21] R. Doc. 18 in *McKey II*; R. Doc. 120.
[22] R. Doc. 125.

## II.   LEGAL STANDARD

### A.  Rule 12(b)(6) Standard

It is well-settled in this Circuit that motions to dismiss under Fed. R. Civ. P. 12(b)(6) are viewed with disfavor and are rarely granted.[23]  To overcome a defendant's motion to dismiss, a plaintiff must plead a plausible claim for relief.[24]  A claim is plausible if it is pleaded with factual content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged.[25]  But, no matter the factual content, a claim is not plausible if it rests on a legal theory that is not cognizable.[26]  In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff.[27]  However, the factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.[28]  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[29]  In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[30]  The

---

[23] *Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (quoting *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).

[24] *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

[25] *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

[26] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010).

[27] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

[28] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

[29] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (internal citations omitted).

[30] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).

Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[31]

## III.   ANALYSIS

### A. McKey's 42 U.S.C. § 1983 Claims Against the Library Board Must Be Dismissed for Failure to State a Plausible Claim for Municipal Liability.

McKey has asserted three claims under 42 U.S.C. § 1983 against the "Defendants," alleging that: (1) Defendants willfully and maliciously caused her detention and prosecution without probable cause and in violation of the Fourth Amendment; (2) Defendants caused her detention and prosecution based on her race, in violation of the Equal Protection Clause of the Fourteenth Amendment; and (3) Defendants violated her rights to due process under the Fourteenth Amendment after her arrest, but before the conclusion of her criminal prosecution, by intentionally losing and/or destroying several items of material evidence.[32]

Under 42 U.S.C. § 1983, every person who, under color of any state law, subjects or causes to be subjected, any person within the jurisdiction of the United States to a "deprivation of any rights, privileges, or immunities under the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."[33] To state a viable § 1983 claim, the complaint must allege: (1) the violation of a constitutional right; and (2) that the

---

[31] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).
[32] R. Doc. 1 in *McKey II*, at ¶¶ 32-34.
[33] 42 U.S.C. § 1983.

violation was committed by a person acting under color of state law.[34]  The Supreme Court has made clear that, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."[35]  According to the Fifth Circuit, "A municipality is liable only for acts directly attributable to it 'through some official action of imprimatur.'"[36] "To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'"[37]

A plaintiff asserting a claim against a municipality under § 1983 must allege: (1) the existence of an official policy or custom; (2) a policymaker's actual or constructive knowledge of the policy or custom; and (3) a constitutional violation whose "moving force" is that policy or custom.[38]  An "official policy or custom" can be shown through evidence of "an actual policy, regulation or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority."[39] The Fifth Circuit has held that the plaintiff must identify "each and any policy which allegedly caused constitutional violations . . . ."[40]  The Fifth Circuit has also recognized that a single decision by a policymaker may, under certain circumstances,

---

[34] *Rowley v. Tchefuncta Club Estates, Inc.*, 151 Fed.Appx. 349, 350 (5th Cir. 2005) (quoting *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005)) (internal quotation marks omitted).

[35] *Monell v. Dept. of Soc. Servs of City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

[36] *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

[37] *Valle*, 613 F.3d at 541 (quoting *Monell*, 436 U.S. at 691, 98 S.Ct. 2018).

[38] *Valle*, 613 F.3d at 541-42 (internal quotation marks omitted) (citing *Monell*, 436 U.S. at 694, 98 S.Ct. 2018).

[39] *Valle*, 613 F.3d at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)).

[40] *Piotrowski*, 237 F.3d at 579-80.  *See, Terry v. City of New Orleans*, 523 F. Supp. 2d 486, 496 (E.D. La. 2007) (same).

constitute a policy for which a municipality may be liable.[41]   However, the Fifth Circuit cautioned that, "this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker."[42]   This Court has likewise recognized that, "isolated unconstitutional actions by municipal employees will almost never trigger liability.'"[43]

Defendants assert that all of McKey's § 1983 claims against the Library Board must be dismissed because she has not alleged that August or Houston acted pursuant to any policy, statement, ordinance, regulation or custom.[44]   Defendants point out that the Complaint merely alleges that August was responsible for the administration of the Library and was required to carry out the policies, rules and regulations established by the Library Board.[45]   Defendants maintain that these allegations are insufficient for the Court to infer that August was acting pursuant to any written policy or custom promulgated by the Library Board when she reported suspected criminal activity to the police in June 2015.

McKey argues that decisions of an official or officials possessing "final policy making authority" represent official policy,[46] and that even a single decision by a policymaker may constitute an act of official policy.[47]   McKey asserts that the Library

---

[41] *Valle*, 613 F.3d at 542 (quoting *Brown v. Bryan County*, 219 F.3d 450, 462 (5th Cir. 2000)) (internal quotation marks omitted).

[42] *Valle*, 613 F.3d at 542 (quoting *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008)).

[43] *Terry*, 523 F. Supp. 2d at 495-96 (quoting *Piotrowski*, 237 F.3d at 578).

[44] R. Doc. 119 at p. 7.

[45] *Id*. (*quoting* R. Doc. 1 in *McKey II*, at ¶ 8).

[46] R. Doc. 120 at p. 5 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)) (internal quotation marks omitted).

[47] R. Doc. 120 at pp. 5-6 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

Board delegated policymaking authority to August as the Library Director, since she had the authority to hire, fire, transfer, promote and reassign employees.[48]  Relying on the allegations in her Complaint, McKey claims that August was also delegated final policymaking authority as to when and under what circumstances criminal charges would be instigated.[49]  McKey further alleges that August's decision to "instigate charges" against her was final, was not reviewed in any appeal process by the Library Board, and that as the Library Director, it was within August's delegated authority to make policy in relation to the institution of criminal charges.[50]

In response, Defendants assert that McKey fails to judge the Complaint against the law she cites and overstates the facts that she actually alleged.[51] Defendants point out that McKey specifically alleged that August was responsible for carrying out the policies "***that the Library Board established***," which indicates that August was responsible for following policies established by the Library Board.[52] Defendants further assert that August's authority to supervise the Library staff is not tantamount to a delegation of final policymaking authority on all issues, nor is it a grant of authority to establish new Library Board policy regarding reporting criminal activity to the police.[53]  Defendants argue that if taken to its logical conclusion, McKey's argument would mean that every decision of any official

---

[48] R. Doc. 120 at p. 6.
[49] *Id*. (*citing* R. Doc. 1 in *McKey II*, at ¶ 8).
[50] R. Doc. 120 at p. 6.
[51] R. Doc. 125 at p. 4.
[52] *Id*. at p. 5 (emphasis in original).
[53] *Id*.

authorized to manage and supervise staff constitutes the official policy of the municipality-employer, which is not the law.

The Court agrees with Defendants that McKey does not allege in her Complaint that August or Houston were acting pursuant to a custom or policy of the Library Board when they made a report to the police regarding McKey in 2015. But that does not end the inquiry for purposes of municipal liability under § 1983. As McKey correctly points out, the Fifth Circuit has recognized an "extremely narrow" exception whereby a single decision by a final policymaker can constitute a policy for which the municipality can be held liable.[54] To succeed on this claim, however, McKey must show that August or Houston had final policymaking authority and that their decision to make a complaint to the police was the moving force behind the constitutional injury.

While McKey alleges in the Complaint that August was "an official policymaker in personnel and related matters,"[55] there is no allegation that Houston was a final policymaker for the Library Board. Thus, McKey has failed to allege sufficient facts to show that Houston's decision to report suspected criminal activity to the police constitutes an official policy or custom of the Library Board. As to August, McKey has alleged that the Library Board "establishes the policies, rules and regulations governing the operation of the St. John the Baptist Parish Library, including personnel and related matters involving Library employees," and that, "The

---

[54] *See, Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Brown v. Bryan County*, 219 F.3d 450, 462 (5th Cir. 2000)) (internal quotation marks omitted).
[55] R. Doc. 1 in *McKey II*, at ¶ 5.

Director of the Library *administers* the policies, rules and regulations established by the Board."[56]   McKey further alleged that, "Under Art 3 § 1 of the By-Laws of the Board, the Director is considered the executive officer of the Library and has the responsibility for the administration of the Library and is required to *carry out the policies, rules and regulations established by the Board*."[57]   Nonetheless, McKey summarily asserts that, "The Board has thereby delegated policymaking authority in personnel and related matters to the Director, defendant August.   At all times relevant hereto, therefore, August was making official policy with regard to the library system employees."[58]   McKey reasserts this argument in her Opposition brief, relying on the same conclusory allegation in her Complaint.[59]   McKey does not cite any factual support for this allegation in the Complaint or her Opposition brief.

While the Court must accept McKey's well-pleaded facts as true and view them in the light most favorable to McKey in the context of a motion to dismiss, the Fifth Circuit has made clear that, "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[60]   Accordingly, McKey's conclusory assertion that August was a final policymaker is not sufficient to withstand a motion to dismiss.   Without that conclusory allegation, the Complaint repeatedly asserts that the Director of the Library (August) merely carries out the policies established by the Library Board.   Such allegations are insufficient

---

[56] *Id*. at ¶¶ 7-8 (emphasis added).
[57] *Id*. at ¶ 8 (emphasis added).
[58] *Id*.
[59] R. Doc. 120 at p. 6 (*citing* R. Doc. 1 in *McKey II*, at ¶ 8).
[60] *Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002) (internal citations omitted).

to show that August was a final policymaker of the Library Board. Accordingly, McKey has failed to allege any facts to show that August's decision to report suspected criminal activity to the police constitutes an official policy or custom of the Library Board.

Further, it is evident to the Court that, like the plaintiffs in *Valle v. City of Houston*,[61] McKey is conflating August's decision-making authority over certain personnel matters with final policymaking authority. The Fifth Circuit "has long distinguished between final decisionmaking authority and final policymaking authority."[62] According to the Fifth Circuit, "A municipal policymaker is someone who has 'the responsibility for making law or setting policy in any given area of local government's business.'"[63] Municipal liability only attaches "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."[64] Citing the Supreme Court's decision in *Pembaur v. City of Cincinnati* in her Opposition brief, McKey asserts that the Library Board delegated policymaking authority to August as the Library Director because she had the authority to hire, fire, transfer, promote and reassign employees.[65] McKey's argument reflects a clear misunderstanding of *Pembaur* and Fifth Circuit precedent.[66] As the Fifth Circuit explained in *Valle*, "We have long recognized that

---

[61] *Valle v. City of Houston*, 613 F.3d 536, 542-43 (5th Cir. 2010).

[62] *Valle*, 613 F.3d at 542; *See, Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 n.12, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)).

[63] *Valle*, 613 F.3d at 542 (quoting *Praprotnik*, 485 U.S. at 125, 108 S.Ct. 915).

[64] *Valle*, 613 F.3d at 542 (quoting *Pembaur*, 475 U.S. at 481, 106 S.Ct. 1292) (internal quotation marks omitted).

[65] R. Doc. 120 at pp. 5-6 (citing, 475 U.S. at 480, 106 S.Ct. 1292).

[66] *Valle*, 613 F.3d at 543 (citing *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008)).

the 'discretion to exercise a particular function does not necessarily entail final policymaking authority over that function.'"[67]  McKey has failed to allege any facts to show that August's decision-making authority over certain personnel matters, including the ability to hire and fire employees, also constituted final *policymaking* authority.  Further, the Complaint is completely devoid of any allegations that August is responsible for making law or setting policy for the Library Board.[68]  As such, McKey has failed to allege sufficient facts to show that August was a final policymaker of the Library Board, or that her decision to make a complaint to the police constituted a policy or custom of the Library Board.

Because McKey cannot satisfy the first requirement of a § 1983 claim for municipal liability against the Library Board, the Court finds that McKey's first, second and third causes of action against the Library Board fail to state a plausible claim against the Library Board and must be dismissed.

### B. Houston and August Are Entitled to Qualified Immunity From McKey's 42 U.S.C. § 1983 Claims.

McKey asserts the same three § 1983 claims against Houston and August as she alleged against the Library Board.[69]  McKey specifies in the Complaint that August and Houston are sued in their individual capacities as employees of the

---

[67] *Valle*, 613 F.3d at 543 (quoting *Bolton*, 541 F.3d at 549; *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993)).
[68] *Valle*, 613 F.3d at 542 (quoting *Praprotnik*, 485 U.S. at 125, 108 S.Ct. 915).
[69] R. Doc. 1 in *McKey II*, at ¶¶ 32-34.

Library.[70]  Defendants argue that all three § 1983 claims against August and Houston must be dismissed because they are entitled to qualified immunity.[71]

A state official can be sued in his individual capacity and held personally liable under § 1983 if a plaintiff can show that the official, acting under state law, caused the deprivation of a federal right.[72]  According to the Fifth Circuit, "This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a constitutional violation." [73] As a defense to § 1983 claims, government officials may invoke qualified immunity, which shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[74]  The Supreme Court has made clear that qualified immunity functions as an immunity from suit, rather than a mere defense to liability.[75] "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly

---

[70] *Id.* at ¶¶ 4-5.

[71] R. Doc. 119-1 at pp. 9-14.

[72] *Terry v. City of New Orleans*, 523 F. Supp. 2d 486 (E.D. La. 2007) (citing *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)).

[73] *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citing *Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir. 1996); *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)) (internal citation omitted).

[74] *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)) (internal quotation marks omitted).

[75] *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)) (internal quotation marks omitted).

violate the law.'"[76]  "This means that even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity."[77]

Once the government official asserts qualified immunity, the burden shifts to the plaintiff to negate the defense.[78]  To overcome a claim of qualified immunity, a plaintiff must demonstrate: (1) that the official violated a statutory or constitutional right; and (2) that the right was "clearly established" at the time of the challenged conduct.[79]  According to the Fifth Circuit, a constitutional right is "clearly established" when the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."[80]  A defendant's actions "are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff."[81]

### a. McKey's § 1983 Claim Based Upon Fourth Amendment Violations.

In her first cause of action, McKey alleges that Defendants "willfully and maliciously caused the detention and prosecution of the Plaintiff without probable

---

[76] *Brumfield v. Hollins*, 551 F.3d 322, 326-27 (5th Cir. 2008) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)).

[77] *Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001) (internal quotation marks omitted).

[78] *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

[79] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (citation omitted); *Club Retro, LLC*, 568 F.3d at 194 (citations omitted).

[80] *Thompson v. Upshur County, TX*, 245 F.3d 447, 457 (5th Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)) (internal quotation marks omitted); *Club Retro, LLC*, 568 F.3d at 194 (quoting *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004) (en banc)).

[81] *Thompson*, 245 F.3d at 457 (citing *Anderson*, 483 U.S. 635, 107 S.Ct. at 3040; *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997)) (emphasis in original).

cause, in violation of the Fourth Amendment to the United States Constitution, violations which are made actionable by 42 U.S.C. § 1983."[82] Defendants assert that August and Houston are entitled to qualified immunity from this claim because McKey alleges that they violated her Fourth Amendment rights by reporting false information to the police, yet the mere filing of a police report does not implicate a constitutional right.[83] Defendants claim that when a plaintiff only alleges that a defendant provided information to the authorities, but does not allege facts from which one could plausibly infer that the report alone led to the plaintiff's arrest, courts have found it appropriate to dismiss the plaintiff's complaint for failure to adequately plead causation.[84] Defendants argue that McKey has only alleged that "the prosecution of the Plaintiff was caused by Houston and August," which is conclusory and insufficient to allege a deprivation of her Fourth Amendment rights.[85]

McKey asserts that the cases cited by Defendants are easily distinguishable from the facts in this case, as they did not involve defendants intentionally filing false complaints with the police or allegations that a plaintiff suffered a constitutional violation as a result of a false police report.[86] McKey claims that she has alleged that she was arrested and subsequently prosecuted as a result of Defendants' actions, that she was prohibited from traveling out of state without the court's permission, and

---

[82] R. Doc. 1 in *McKey II*, at ¶ 32.

[83] R. Doc. 119-1 at p. 10 (citing *Wearen v. Maryland*, Civ. A. No. GJH-16-2205, 2016 WL 4082623, at *2 (D. Md. July 28, 2016); *Royster v. Schluderberg,* Civ. A. No. PJM 10-2121, 2013 WL 781599 (D. Md. Feb. 28, 2013)).

[84] R. Doc. 119-1 at pp. 11-12 (citing *Republic Fire & Cas. Ins. Co. v. Charles*, Civ. A. No. 17-5967, 2018 WL 310378, at *3-5 (E.D. La. Jan. 5, 2018)).

[85] R. Doc. 119-1 at p. 12 (*quoting* R. Doc. 1 in *McKey II*, at ¶ 16) (internal quotation marks omitted).

[86] R. Doc. 120 at pp. 10-11 (citations omitted).

that she was required to appear in court 24 times, all of which deprived her of her liberty interests.[87]  McKey relies on *Castellano v. Fragozo*, wherein the Fifth Circuit held that, "The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection," including "the Fourth Amendment if the accused is seized and arrested" and "other constitutionally secured rights if a case is further pursued."[88]  McKey further asserts that these rights were clearly established at the time of Defendants' actions based upon the Fifth Circuit's 2008 decision in *Brown v. Miller*.[89]  McKey asserts that the Fifth Circuit in *Brown* held that the deliberate or knowing creation of a misleading and scientifically inaccurate serology report violates a defendant's due process rights, and that the law was clearly established, for purposes of § 1983, that a state crime lab technician would have known that suppression of exculpatory blood test results would violate a defendant's rights.[90]  McKey then asserts that, "If the right not to be prosecuted on the basis of falsified evidence was clearly established in 1984, then certainly it was clearly established in 2015," and that public officials in August's and Houston's positions would be aware of such rights.[91]

In response, Defendants argue that they do not contend that reporting criminal activity to the police can never implicate a constitutional right, as McKey suggests.[92] Instead, Defendants assert that McKey has not alleged that Houston's and August's

---

[87] R. Doc. 120 at p. 12 (*quoting* R. Doc. 1 in *McKey II*, at ¶ 14) (internal quotation marks omitted).
[88] R. Doc. 120 at p. 13 (quoting *Castellano*, 352 F.3d 939, 953-54 (5th Cir. 2003)) (internal quotation marks omitted).
[89] R. Doc. 120 at p. 13 (citing *Brown*, 519 F.3d 231 (5th Cir. 2008)).
[90] R. Doc. 120 at pp. 13-14 (quoting *Brown*, 519 F.3d at 237-38) (internal quotation marks omitted).
[91] R. Doc. 120 at p. 14.
[92] R. Doc. 125 at p. 6.

complaint to the police violated her constitutional rights in this case because McKey has not alleged sufficient facts to show that the constitutional deprivation she claims she suffered – prosecution without probable cause – was legally caused by their complaint, as opposed to information supplied by Ed Sims or Lt. Dubus' investigation.[93]  Defendants argue that McKey's entire Opposition brief focuses on her contention that she adequately alleged a constitutional injury, but does not respond to Defendants' argument that she failed to allege causation.[94]

The Court finds that McKey has failed to allege sufficient facts to show that the actions of August and Houston, in reporting suspected criminal activity to the police on July 2, 2015, violated her Fourth Amendment rights.  In the Complaint, McKey alleges that Defendants "willfully and maliciously caused the detention and prosecution of the Plaintiff without probable cause."[95]  It is unclear from this nebulous language what Fourth Amendment rights McKey claims were violated, as McKey seems to conflate claims for false arrest, false imprisonment, and malicious prosecution.  To the extent that McKey is alleging a false arrest or false imprisonment claim, such allegations fail to state a constitutional violation by August or Houston because they are not the government officials who arrested or detained her.  As alleged in her Complaint, it was Lt. Dubus of the Sheriff's Office who obtained a warrant for McKey's arrest and ultimately arrested her.[96]  McKey also alleges that Lt. Dubus conducted his own investigation into the accusations made by Houston and

---

[93] *Id*.
[94] *Id*. at p. 7.
[95] R. Doc. 1 in *McKey II*, at ¶ 32.
[96] R. Doc. 1 in *McKey II*, at ¶¶ 11-14.

August, which resulted in the issuance of McKey's arrest warrant.[97]  McKey has not directed the Court to any legal authority indicating that a false arrest or false imprisonment claim can be brought against someone who reported criminal activity to the police and is neither a law enforcement officer nor the attorney bringing the criminal prosecution.[98]  Accordingly, Houston and August are entitled to qualified immunity as to any Fourth Amendment claim premised upon McKey's false arrest or false imprisonment.

To the extent McKey asserts a § 1983 claim against August and Houston based upon malicious prosecution, the Fifth Circuit has held that, "the federal Constitution does not include a 'freestanding' right to be free from malicious prosecution."[99]  "Instead, it must be shown that the officials violated specific constitutional rights in connection with a 'malicious prosecution.'"[100]  According to the Fifth Circuit, "the initiation of criminal charges without probable cause may set in force events that run afoul of the . . . Fourth Amendment if the accused is seized and arrested . . . or other constitutionally secured rights if a case is further

---

[97] *Id.*

[98] The Court notes that the cases cited by McKey involve lawsuits filed against law enforcement officers and municipalities for constitutional violations stemming from their unlawful arrest or detention.  *See*, R. Doc. 120 at pp. 12-13 (citing *Manuel v. City of Joliet, Ill*, 137 S.Ct. 911, 920, 197 L.Ed.2d 312 (2017) (fourth amendment violations based upon arrest and detention brought against municipality and several of its police officers); *Nieves v. Bartlett*, 139 S.Ct. 1715, 1726, 204 L.Ed.2d 1 (2019) (first amendment retaliation claim brought against arresting officers); *Brown v. Miller*, 519 F.3d 231 (5th Cir. 2008) (suit against municipality, law enforcement officers and lab technician who fabricated evidence for alleged misconduct in the investigation and prosecution of case).  McKey also cites *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003), where, "The heart of Castellano's claim is that the prosecution obtained his arrest and conviction by use of manufactured evidence and perjured testimony . . . ."  *See*, R. Doc. 120 at p. 13 (citing *Castellano*, 352 F.3d at 955, 959).  *See also*, *Castellano*, 352 F.3d at 959-60.  Those cases are clearly distinguishable from the facts of this case.

[99] *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009) (citing *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003))

[100] *Deville*, 567 F.3d at 169.

pursued."[101]  Further, "courts have recognized that 'a plaintiff may state an actionable claim under the Fourth Amendment arising out of a pretrial detention resulting from initiation of a prosecution without probable cause."[102]  Such claims, however, rely on a finding that the defendants lacked probable cause for the plaintiff's arrest.[103]

Here, McKey alleges that August and Houston caused her prosecution and that, "Houston's and August's instigation of the criminal felony charges against the Plaintiff was malicious and without probable cause."[104]  This conclusory statement, without more, is insufficient to state a constitutional violation by August or Houston. While McKey alleges that Houston and August "made a false report of a crime or crimes allegedly committed by Mrs. McKey," McKey has not alleged any facts to show how the complaint to the police was false.[105]  The Court notes that McKey gives short-shrift to August's and Houston's complaint to the police, dedicating only a sentence to it in the Complaint, even though the complaint is the basis for all of her claims in this suit.  McKey merely alleges that her employment at the Library "was terminated on May 27, 2015 by Defendant August, acting in concert with the Defendant Houston,"[106] that Houston and August "reported that the Plaintiff had stolen documents belonging to the Library and had injured public records of the Library,"[107] and that Houston and August told Lt. Dubus that they wanted to press criminal

---

[101] *Deville*, 567 at 169 (quoting *Castellano*, 352 F.3d at 953-54).
[102] *Dorosan v. Stewart*, Civ. A. No. 18-181-SDD-RLB, 2019 WL 4738790, at *6 (M.D. La. Sept. 27, 2019) (quoting *Seals v. McBee*, Civ. A. No. 16-14837, 2019 WL 2451630 at *5 (E.D. La. June 12, 2019)).
[103] *Dorosan*, Civ. A. No. 18-181-SDD-RLB, 2019 WL 4738790 at *6 (citing authority).
[104] R. Doc. 1 in *McKey II*, at ¶¶ 16 & 20.
[105] *Id*. at ¶ 10.
[106] *Id*. at ¶ 9.
[107] *Id*. at ¶ 10.

charges against McKey for "essentially the same reasons for which she was terminated."[108]   McKey does not allege any additional facts in the Complaint regarding why she was terminated, nor does she allege that it was a result of the report made to the police.  More importantly, however, McKey *clearly admits* that she took documents from the Library, alleging that, "These criminal charges related to actions allegedly taken by the Plaintiff while she was still a supervisory employee of the Library.  As was well known to the Defendants Houston and August, the Plaintiff had on May 13, 2015 at 10:00 a.m. *returned all library documents that had been requested* by Defendant August."[109]   Although no further explanation is provided regarding the documents taken or returned by McKey, this allegation rebuts her prior, conclusory allegation that August and Houston falsely accused her of criminal activity.

The Court further finds that McKey seems to conflate the filing of a police report  with the filing of criminal charges.  Contrary to McKey's insinuation, the two are not synonymous.  As alleged in the Complaint, Houston and August reported suspected criminal activity to the police on July 2, 2015, Lt. Dubus investigated those accusations and, after that investigation, the District Attorney's Office formally charged McKey on September 24, 2015 with 51 counts of injuring public records, in violation of La. R.S. 14:132(B).[110]   To the extent that McKey alleges the charges brought against her by the District Attorney "were false, pretextual, and unfounded,"

---

[108] *Id*. at ¶ 13.
[109] *Id*. at ¶ 15 (emphasis added).
[110] *Id*. at ¶¶ 10-14, 22.

such allegations concern actions taken by the District Attorney, not Houston or August.[111]  As such, the allegations are insufficient to state a constitutional violation by August or Houston for malicious prosecution.

Because McKey has failed to allege a constitutional violation by August or Houston based upon their reporting of criminal activity to the police, they are entitled to qualified immunity from McKey's § 1983 claims based upon Fourth Amendment violations, and the claims must be dismissed.

### b. McKey's § 1983 Claim Based Upon Equal Protection Violations.

In her second cause of action, McKey asserts that Defendants "caused the detention and prosecution of the Plaintiff because of her race, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, violations which are actionable by 42 U.S.C. § 1983."[112]  While not a model of clarity, it appears that McKey is asserting that Houston's decision to make a complaint to the police, which caused her detention and prosecution, was racially motivated.[113]

Defendants argue that the claim should be dismissed because McKey has failed to allege disparate treatment, as required to state an equal protection claim.[114] Defendants assert that, "No equal protection violation occurs where a plaintiff's allegations fail to allege any facts showing that [others were] similarly situated."[115]

---

[111] *Id*. at ¶ 22.
[112] *Id*. at ¶ 33.
[113] McKey affirms this in her Opposition brief.  R. Doc. 120 at p. 15.
[114] R. Doc. 119-1 at pp. 12-13.
[115] *Id*. at 12 (quoting *Williams v. City of Irving, Texas*, Civ. A. No. 3:15-CV-1701-BH, 2017 WL 507402, at*4 (N.D. Tex. Jan. 13, 2017)) (internal quotation marks omitted).

Defendants further claim that courts have dismissed actions when plaintiffs failed to allege, or prove, that they were treated differently than similarly situated members of other groups.[116]  Defendants assert that McKey has not identified anyone who was similarly situated to her, nor has she alleged that August or Houston treated her differently than those individuals.[117]  As such, Defendants argue that she has not alleged sufficient facts to establish a deprivation of her right to equal protection.

McKey argues that while many equal protection claims are based upon disparate treatment, that is not the only possible basis for an equal protection claim.[118]  McKey asserts that her claim is different because she alleges that Houston and August caused her to be prosecuted based on their false accusations because she is white.[119]  McKey contends that courts in this Circuit have indicated that an equal protection claim may lie where a government official uses a racial epithet or stated that they targeted the plaintiff because of race and infringed upon the rights of the plaintiff, regardless of how other "similarly situated" individuals were treated.[120]  As such, McKey claims that she is not required to investigate Defendants' treatment of other employees, whether Defendants have had African-American employees arrested on false charges, or whether they systematically discriminated against

---

[116] R. Doc. 119-1 at pp. 12-13 (citing *Woodard v. Andrus*, 419 F.3d 348, 354 (5th Cir. 2005); *Thomas v. Jackson*, Civ. A. No. 3:14-cv-4530-B-BN, 2016 WL 749558, at * (N.D. Tex. Feb. 5, 2016)).

[117] R. Doc. 119-1 at p. 13.

[118] R. Doc. 120 at p. 14.

[119] *Id*. at p. 15 (quoting *Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 586 (5th Cir. 2016)) (internal quotation marks omitted).

[120] R. Doc. 120 at pp. 15-17 (citing *Club Retro, LLC v. Hilton*, 568 F.3d 181, 193 (5th Cir. 2009); *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999); *Johnson v. Morel*, 876 F.2d 477 (5th Cir. 1989), *abrogated on other grounds by Harper v. Harris Cty., Tex*, 21 F.3d 597 (5th Cir. 1994)).

Caucasian employees based on their race.[121]   Because she has alleged that August and Houston caused her wrongful prosecution because of her race, McKey argues that she has alleged that she was intentionally discriminated against based on her membership in a protected class and, therefore, she has stated a viable equal protection claim.[122]

In response, Defendants reiterate their position that the hallmark of an equal protection claim is disparate treatment of the plaintiff as compared to others under similar circumstances, which McKey has failed to allege.[123]   To state an equal protection claim against August and Houston, Defendants assert that McKey must allege facts from which one could plausibly infer that they treated McKey differently than they would have treated others under the same circumstances because of her race.  Defendants argue that even accepting the allegations in the Complaint as true, as the Court must, McKey has failed to state a viable equal protection claim against August or Houston.[124]

The Equal Protection Clause prohibits a state from denying to any person within its jurisdiction the equal protection of the laws, which "is essentially a direction that all persons similarly situated should be treated alike."[125]   "It is well established that a showing of discriminatory intent or purpose is required to establish

---

[121] R. Doc. 120 at p. 17.

[122] *Id*. at pp. 17-18 (citing *Johnson*, 876 F.2d 477).

[123] R. Doc. 125 at p. 7.

[124] *Id*. at pp. 7-8.

[125] *Club Retro, LLC v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009) (quoting *Qutb v. Strauss*, 11 F.3d 488, 492 (5th Cir. 1993)) (internal quotation marks omitted).

a valid equal protection claim."[126]  The Fifth Circuit has likewise explained that, "[t]o state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff must allege and prove that [(1) he or she] received treatment different from that received by similarly situated individuals and that [(2)] the unequal treatment stemmed from a discriminatory intent."[127]  Pertinent to the instant case, the Fifth Circuit has held that, "Allegations [of discriminatory intent] that are merely conclusory, without reference to specific facts, will not suffice."[128]

The Court finds that McKey has failed to sufficiently allege that August's or Houston's report of suspected criminal activity to the police in 2015 was motivated by a discriminatory intent based on race.  As Defendants point out, McKey alleges in the Complaint that she is Caucasian and that August and Houston are African-American.  She further alleges that August terminated her on May 27, 2015, and that "Defendants' causing of the termination of the Plaintiff's employment and the Plaintiff's arrest were both racially motivated."[129]  These conclusory allegations are insufficient to state an equal protection violation by August or Houston.

Regarding Houston's and August's "racial animus," McKey alleges that: (1) she was terminated "because of racial and other animus towards her by the Defendant Houston and other African American employees of the library;" (2) documentary evidence produced in the 2016 lawsuit shows that "there is a racial divide in her

---

[126] *Muslow v. Bd. of Supervisors of Louisiana State Univ. and Agric. and Mechan. College*, Civ. A. No. 19-11793, 2020 WL 1864876, at *22 (E.D. La. Apr. 14, 2020) (quoting *Doe v. Silsbee Indep. Sch. Dist.*, 402 Fed.Appx. 852, 855 (5th Cir. 2010)).
[127] *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004)) (internal quotation marks omitted).
[128] *Fennell*, 804 F.3d at 412 (quoting *Priester*, 354 F.3d at 420).
[129] R. Doc. 1 in *McKey II*, at ¶¶ 9, 16, 17.

department that is as wide as the Mississippi River;" (3) Houston testified in the 2016 lawsuit that there has been racial tension at the Library since Houston was hired; (4) Houston testified in the 2016 case that she has had a grudge against McKey going back 25 years; (5) Houston and August stripped away many of her job duties over time and reassigned them to African-American employees; (6) Houston and August demoted McKey in 2015 based on their false allegation that McKey had expressed an inability to fulfill her position of Assistant Director; (7) August accused McKey in writing of violating state criminal law on May 7, 2015; (8) Houston "continuously snubbed" McKey and spoke to her in a condescending manner during her employment; (9) Houston testified that the District Attorney is her long-time friend; and (10) Houston conducted her own legal research and provided it to the District Attorney's Office or the Sheriff's Office, which resulted in the original bill of information being filed against McKey by the District Attorney's Office.[130]   Even accepting these allegations as true, as the Court must, these allegations are conclusory, fail to allege a discriminatory intent on the part of Houston or August, and offer no factual support for McKey's equal protection claim based upon her "detention and prosecution . . . because of her race."[131]   As such, these allegations are "not probative of disparate treatment or discriminatory intent."[132]   McKey also alleges that between March 2010 and her termination in 2015, "Houston initiated a barrage of write-ups, often of a racial nature, that were designed for the purposes of creating

---

[130] R. Doc. 1 in *McKey II*, at ¶ 19.
[131] *Id*. at ¶ 33.
[132] *Club Retro, LLC v. Hilton*, 568 F.3d 181, 213 (5th Cir. 2009).

a phony paper trail to mask her own racial discrimination and make Mrs. McKey so miserable that she would resign."[133]  The Court likewise finds that this allegation does not provide factual support for an equal protection claim based upon McKey's "detention and prosecution."[134]

While McKey contends that she need not assert disparate treatment under the Fifth Circuit decisions in *Club Retro, LLC v. Hilton*,[135] *Williams v. Bramer*,[136] and *Johnson v. Morel*,[137] her arguments reflect a flawed interpretation of those cases.  In *Club Retro, LLC*, a 2009 decision, the Fifth Circuit made clear that an equal protection claim requires allegations of both disparate treatment and discriminatory intent.[138]  Although perhaps overlooked by McKey, in the very first sentence of the Fifth Circuit's equal protection analysis, the court clearly held that the defendants "are entitled to qualified immunity for plaintiffs' Fourteenth Amendment equal protection claims *because plaintiffs have failed to allege either an intent to discriminate or unequal treatment*."[139]  Moreover, contrary to McKey's insinuation, the plaintiffs in *Club Retro, LLC* did allege disparate treatment in the form of "the absence of similar raids against GG's, a white-owned nightclub that caters to white patrons . . . ."[140]  Thus, to the extent McKey argues that *Club Retro, LLC* implies that she need not allege disparate treatment by August or Houston to assert a plausible

---

[133] R. Doc. 1 in *McKey II*, at ¶ 19(e).
[134] *Id*. at ¶ 33.
[135] *Club Retro, LLC*, 568 F.3d 181.
[136] 180 F.3d 699 (5th Cir. 1999).
[137] 876 F.2d 477 (5th Cir. 1989).
[138] *Club Retro, LLC*, 568 F.3d at 212-13.
[139] *Id*. at 212 (emphasis added).
[140] *Id*. at 213.

equal protection claim against them, her argument is completely baseless.[141] Although the Fifth Circuit's earlier decisions in *Williams* and *Johnson*, issued in 1999 and 1989, respectively, indicate that an equal protection claim requires only an allegation of intentional discrimination based upon membership in a protected class, this Court must follow the most recent guidance provided by the Fifth Circuit on this issue, which is *Club Retro, LLC.* Under that guidance, the Court finds that Houston and August are entitled to qualified immunity from McKey's §1983 equal protection claim because she has failed to allege unequal treatment.

### c. McKey's § 1983 Claim Based Upon Due Process Violations.

In her third cause of action, McKey alleges that Defendants violated her due process rights after her arrest, but before the conclusion of her criminal prosecution, by: (1) intentionally losing and/or destroying material evidence, including the notes of Edward Sims, a Library employee who investigated the criminal accusations against McKey at the request of August and Houston, and documentary evidence showing whether McKey had permission to access the computer server at the Library and whether there were any limitations on that access; (2) destroying and/or losing the backup logs of McKey's work computer; and (3) returning the hard drive of McKey's work computer, which McKey "allegedly tampered with," back into service in the Library without making a forensic copy of it, thereby destroying any

---

[141] The Court further notes that McKey seems to interpret *Club Retro, LLC*, *Williams*, and *Johnson* as implying that she need not allege disparate treatment if there is an allegation that Defendants targeted her because of her race. R. Doc. 120 at pp. 15-17. The Complaint is devoid of any allegation that Houston or August stated that they reported criminal activity in 2015 based upon McKey's race. Thus, even under her own erroneous interpretation of the jurisprudence, McKey's allegations are insufficient to state an equal protection claim against August or Houston.

evidentiary value of the hard drive.[142]  McKey alleges that these actions violated her due process rights because Sims was not trained to conduct criminal investigations, all of the lost/destroyed evidence was material to the investigation and defense of the criminal charges brought against McKey, and they prolonged her criminal case, interfered with fair hearings and trial preparation, and added to the attorney's fees and litigation expenses incurred by McKey in defending the criminal case.[143]

Defendants assert that McKey has failed to allege a plausible due process claim because she has not alleged that August or Houston lost or destroyed the evidence in question, nor has she alleged facts from which one could conclude that they caused the alleged loss or destruction of evidence.[144]  Even if McKey could overcome that hurdle, Defendants assert that she would still be unable to allege facts to establish that August or Houston deprived her of her due process rights because the criminal charges against her were dismissed before trial.  Defendants contend that when criminal charges are dismissed before trial, courts have held that no constitutional due process deprivation can be established as a matter of law.[145]  As such, Defendants argue that the Court should dismiss her § 1983 claims against August and Houston based upon their qualified immunity from suit.

According to McKey, Defendants have argued that they are entitled to qualified immunity because she only alleged that Sims, not August or Houston,

---

[142] R. Doc. 1 in *McKey II*, at ¶ 34.
[143] *Id.*
[144] R. Doc. 119-1 at p. 13.
[145] *Id.* at p. 14 (citing *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999); *Rogala v. District of Columbia*, 161 F.3d 44, 55-56 (D.C. Cir. 1998); *Taylor v. Waters*, 81 F.3d 429, 435-36 (4th Cir. 1996); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988); *Nygren v. Predovich*, 637 F. Supp. 1083, 1087 (D. Colo. 1986)).

destroyed the evidence and because she suffered no constitutionally-recognized harm since her criminal case was dismissed.[146]   McKey argues that Defendants' first argument is "mistaken" because she alleged that Houston and August, not Sims, lost or destroyed the evidence at issue.   McKey notes that it is unlikely that Sims would have even had the means to destroy the evidence, and that he acted at all times as an agent of Defendants.[147]   McKey further asserts that Defendants' second argument, which relies on authority from outside the Fifth Circuit, similarly lacks merit.   McKey argues that the liberty and property interests of which she was deprived "constitute constitutional harm under *Castellano v. Fragozo*, *supra*," and that, "the Fifth Circuit expressly held in *Brown v. Miller*, *supra*, [that] suppression of exculpatory evidence violates a clearly established right."[148]   Without any further analysis, McKey asserts, "Thus, Defendants' argument fails."[149]

In response, Defendants assert that McKey failed to distinguish the cases cited in their Motion to Dismiss, and failed to cite any cases finding a deprivation of a due process right where exculpatory evidence was lost or destroyed and the plaintiff was never tried or convicted.[150]   Defendants maintain that, under the cases cited in their Motion, no deprivation of any due process right can be caused by the unavailability of evidence if there is no trial or opportunity to present evidence because the criminal

---

[146] R. Doc. 120 at p. 18.
[147] *Id*.
[148] *Id*. at pp. 18-19 (citing *Castellano*, 352 F.3d 939 (5th Cir. 2003); *Brown*, 519 F.3d 231, 237-38 (5th Cir. 2008)).
[149] R. Doc. 120 at p. 19.
[150] R. Doc. 125 at pp. 8-9.

charges are dismissed. As such, Defendants argue that the Court should dismiss McKey's Fourteenth Amendment due process claim.

Reading the allegations in the Complaint together with the arguments in McKey's Opposition brief, it is unclear to the Court what constitutional right forms the basis of McKey's due process claims against Houston and August. In the Complaint, McKey asserts that Defendants violated her "rights to due process of law after the Plaintiff's arrest but prior to the conclusion of the criminal prosecution," by intentionally losing and/or destroying evidence that was "material to the investigation and defense of the criminal charges brought against" McKey.[151] McKey, however, fails to cite any legal authority in her Opposition brief to support a due process claim based upon the loss or destruction of material evidence in a matter where the criminal charges are dismissed and the case does not proceed to trial. McKey also fails to cite any legal authority to show that such a claim can be brought against August and Houston, who are neither law enforcement officers nor prosecutors in the criminal matter.

In her Opposition brief, however, McKey asserts that, "The liberty and property interests of which Mrs. McKey was deprived constitute constitutional harm under *Castellano v. Fragozo, supra.* Moreover, as the Fifth Circuit expressly held in *Brown v. Miller, supra,* suppression of exculpatory evidence violates a clearly established right."[152]  The Court is unable to decipher the constitutional violation

---

[151] R. Doc. 1 in *McKey II*, at ¶ 34.
[152] R. Doc. 120 at pp. 18-19 (citing *Castellano*, 352 F.3d 939 (5th Cir. 2003); *Brown v. Miller*, 519 F.3d at 237-38).

alleged by McKey in these conclusory statements. To the extent McKey cites *Castellano* without any context for her reliance thereon, the Fifth Circuit in that case determined that, "'malicious prosecution' standing alone is no violation of the United States Constitution, and that to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law."[153]  The Fifth Circuit in *Castellano* further held that, "a state's manufacturing of evidence and knowing use of that evidence along with perjured testimony to obtain a wrongful conviction deprives a defendant of his long recognized right to a fair trial secured by the Due Process Clause . . . ."[154]  McKey, however, has not alleged in either the Complaint or her Opposition brief that August or Houston manufactured evidence that resulted in a wrongful conviction.  Nor can she, since the criminal charges brought against her were dismissed with prejudice "via nolle prosequi."[155]  Thus, McKey's conclusory reliance upon *Castellano* fails to show any constitutional violation by August or Houston with respect to the lost or destroyed evidence.

McKey's reliance upon *Brown v. Miller*[156] fares no better.  In *Brown*, the Fifth Circuit held that a lab technician who fabricated a serology report that was used to convict the defendant violated the defendant's due process rights, and that a reasonable laboratory technician would have known that those actions violated those rights.[157]  As such, the Fifth Circuit held that the lab technician was not entitled to

---

[153] *Castellano*, 352 F.3d at 942.

[154] *Id.*

[155] R. Doc. 1 in *McKey II*, at ¶ 29.

[156] 519 F.3d 231, 237-38 (5th Cir. 2008)).

[157] 519 F.3d at 237.

qualified immunity.[158]  In the portion of the opinion specifically cited by McKey, the Fifth Circuit held that, "A criminal defendant's due process rights are violated when the government obtains a conviction with testimony that government agents know is false."[159]  The Fifth Circuit recognized that, "The Supreme Court held in *Brady v. Maryland* that a criminal prosecutor's failure to disclose exculpatory evidence to a criminal defendant violates a defendant's right to a fair trial.  A police officer's deliberate concealment of exculpatory evidence violates this same right, and can give rise to liability under § 1983."[160]  As with *Castellano,* the Court finds that *Brown* is inapplicable in this case because McKey has not alleged that Houston or August fabricated evidence to obtain a conviction or that they were criminal prosecutors who failed to disclose exculpatory evidence to McKey.

Based on the foregoing, and the conclusory nature of McKey's allegations in both her Complaint and Opposition brief, the Court concludes that McKey has failed to allege a constitutional violation by August or Houston to support her § 1983 claim for a due process violation relating to her criminal proceeding.  Accordingly, Houston and McKey are entitled to qualified immunity from this claim, which must be dismissed.

### C. McKey's Malicious Prosecution Claims Against Defendants.

In her fourth cause of action, McKey asserts that, "The Defendants are jointly and severally liable to the Plaintiff for having committed the state law tort of

---

[158] *Id*. at 238.
[159] *Id*. at 237 (citing *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)).
[160] *Brown*, 519 F.3d at 237 (citing *Brady*, 373 U.S. 83, 86-87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)).

malicious prosecution."[161]  Defendants assert that McKey's Complaint fails to state a viable claim for malicious prosecution under 42 U.S.C. § 1983 or Louisiana law because it does not sufficiently allege that Defendants' actions caused her arrest or subsequent prosecution.[162]  Specifically, Defendants argue that the Complaint fails to allege sufficient facts to show that August, Houston, or the Library Board caused Lt. Dubus to arrest McKey or caused the District Attorney's Office to bring the criminal proceedings against her.[163]  Defendants argue that an individual or entity who reports suspected criminal activity to the police is not liable for malicious prosecution under Louisiana law if law enforcement's independent actions and investigation break the chain of causation between the citizen's complaint and the resulting arrest.[164]  Defendants claim that Louisiana courts have found causation lacking in malicious prosecution cases when an independent decision is made to bring criminal charges after a person reports suspected criminal activity to the police.[165]  Defendants also assert that Louisiana courts have found the element of causation lacking in malicious prosecution cases against private citizens who report to the

---

[161] R. Doc. 1 in *McKey II*, at ¶ 35.

[162] R. Doc. 119-1 at pp. 14-15.

[163] *Id*. at p. 15.

[164] *Id*. (citing *Adams v. Harrah's Bossier City Inv. Co.*, 41,468, pp. 4-9 (La. App. 1 Cir. 1/10/07), 948 So.2d 317, 320-22).

[165] R. Doc. 119-1 at pp. 15-16 (citing *Williams v. Higbee Lancoms, LP*, Civ. A. No. 15-2486, 2016 WL 772650, at *5 (E.D. La. Feb. 29, 2016); *Duncan v. City of Hammond*, Civ. A. No. 08-5043, 2009 WL 10680100, at *4 (E.D. La. July 9, 2009); *Kennedy v. Sheriff of East Baton Rouge*, 2005-1418 (La. 7/10/06), 935 So.2d 669, 690 n.20; *Banks v. Brookshire Bros.*, 93-1616 (La. App. 3 Cir. 6/1/94), 640 So.2d 680, 682; *Republic Fire & Cas. Ins. Co. v. Charles*, Civ. A. No. 17-5967, 2018 WL 310378 (E.D. La. Jan. 5, 2018)).

police when the police bring charges against the plaintiff based on information obtained from multiple sources.[166]

Defendants argue that, as in the cases cited, McKey cannot state a claim for malicious prosecution because the independent investigation of Lt. Dubus and actions of the District Attorney's office broke the chain of causation between August and Houston reporting potential criminal activity to the police and McKey's arrest.[167] Defendants point out that McKey alleged in the Complaint that Lt. Dubus was assigned to investigate the accusations made by Houston and August, that he did so by meeting with August, Houston, and Ed Sims, the Library's IT Director, that an arrest warrant was issued for McKey, and that the District Attorney's Office formally charged her with injuring public records.[168]   Thus, Defendants neither arrested McKey nor selected the charges filed against her.  Defendants claim that Lt. Dubus also obtained information from sources other than August and Houston (*i.e.,* Sims) regarding McKey's conduct before arresting her, and that August's and Houston's involvement was limited to making a report to the police and cooperating with Lt. Dubus' investigation.  Defendants contend that the actions of Lt. Dubus and the District Attorney's Office sufficiently broke the chain of causation between Defendants' actions and McKey's arrest, such that the malicious prosecution claim should be dismissed.[169]

---

[166] R. Doc. 119-1 at p. 16 (citing *Bohn v. Miller*, 2015-1089, pp. 8-10 (La. App. 3 Cir. 4/6/16), 189 So.3d 592, 598).
[167] R. Doc. 119-1 at p. 16.
[168] *Id*. at pp. 16-17 (*citing* R. Doc. 1 in *McKey II*, at ¶¶ 14 & 22).
[169] R. Doc. 119-1 at p. 17.

McKey argues that the causation requirement is met in this case "due to lack of probable cause and of a completely independent investigation."[170]  McKey asserts that lack of probable cause is evidence of causation, and that there is a presumption that August and Houston acted with malice and caused her unconstitutional seizure because the charges against McKey were dismissed with prejudice for lack of probable cause.[171]  McKey also claims that Lt. Dubus' investigation into the accusations made by August and Houston was not an independent investigation because it was based on the suspicions of August and Houston, and the information provided by Sims was under the oversight and at the direction of Defendants.[172]  McKey contends that Defendants had continuous involvement and influence over her prosecution, pointing out that Houston "conducted her own defective research," and that August and Houston met with prosecutors, served as witnesses, and attended all scheduled hearings of the criminal case.[173]  As such, McKey argues that her arrest and prosecution were based on the individual suspicions of August and Houston alone, and the lack of an independent investigation free from those suspicions fails to break the chain of causation.  McKey asserts that the cases cited by Defendants are distinguishable because this case involves a police complaint filed in bad faith and an investigation that was based solely on the information provided by Defendants.[174]

---

[170] R. Doc. 120 at p. 19.

[171] *Id*. at pp. 19-20 (citing *McCoy v. Burns*, 379 So.2d 1140, 1142 (La. App. 2 Cir. 1980)).

[172] R. Doc. 120 at pp. 20-21 (citing *James v. Woods*, 899 F.3d 404, 409 (5th Cir. 2018); *Craig v. Carter*, 30,625 (La. App. 2 Cir. 9/23/98), 718 So.2d 1068, 1070-71).

[173] R. Doc. 120 at p. 21.

[174] *Id*. at pp. 21-22 (citations omitted).

Nonetheless, if the Court determines that Lt. Dubus conducted an independent investigation, McKey argues that Defendants' actions were the legal cause of her prosecution because they intentionally made false accusations to police that McKey had engaged in criminal conduct knowing that the accusations would lead to her arrest.[175]  McKey avers that the initiation and continuation of criminal proceedings against her were the foreseeable consequences of Defendants' actions "intentionally instituted as a result of racial animus."[176]  McKey claims that Houston conducted her own legal research and provided it to officials to cause the filing of the original bill of information against her.[177]  As such, McKey maintains that Defendants' actions were the but-for cause of her prosecution, regardless of any outside actions taken by officials.

Although McKey contends that she has sufficiently stated a claim for malicious prosecution because the District Attorney lacked probable cause for her prosecution, Defendants argue that lack of probable cause and legal causation are separate elements of a malicious prosecution claim and that McKey must allege sufficient facts to plausibly allege both of them.[178]  Defendants contend that while the Court could infer that the District Attorney did not have probable cause to prosecute McKey based upon her allegation that the judge dismissed the criminal proceeding, that fact is not sufficient to allow the Court to infer that Houston's and August's complaint to the police legally caused the prosecution.  Similarly, Defendants contend McKey's

---

[175] *Id.* at p. 23 (*citing* R. Doc. 1 in *McKey II*, at ¶ 20).
[176] R. Doc. 120 at p. 24 (*citing* R. Doc. 1 in *McKey II*, at ¶ 19).
[177] R. Doc. 120 at p. 24 (*citing* R. Doc. 1 in *McKey II*, at ¶ 19).
[178] R. Doc. 125 at p. 9.

argument that Lt. Dubus' investigation was not completely independent or resulted from deception and influence does not render the factual allegations in the Complaint sufficient to support that argument.  Defendants argue that the facts alleged in the Complaint do not support any inference that Lt. Dubus' investigation lacked independence, or that August or Houston deceived or improperly influenced him or the District Attorney.[179]  According to Defendants, McKey alleges that August and Houston reported that she removed and deleted library documents after she claims she returned them and, notably, McKey does not deny that she took the documents. McKey then alleges that Lt. Dubus investigated the allegations by requesting an additional meeting with August and Houston, and by seeking information from others.  Read in its entirety, Defendants argue that the Complaint demonstrates that Lt. Dubus' investigation broke the legal chain of causation.  As such, Defendants maintain that the Court should dismiss McKey's malicious prosecution claim.

To prevail in a malicious prosecution claim, a plaintiff must prove the following six elements: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against the plaintiff who was defendant in the original proceeding; (3) a bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage.[180]  According to the Louisiana Supreme Court, "Never favored in our law, a malicious prosecution action must

---

[179] *Id*. at p. 10.
[180] *Kennedy v. Sheriff of East Baton Rouge*, 2005-1418 (La. 7/10/06), 935 So.2d 669, 690 n.20 (citing *Miller v. East Baton Rouge Parish Sheriff's Dept.*, 511 So.2d 446, 452 (La. 1987); *Jones v. Soileau*, 448 So.2d 1268, 1271 (La. 1984)).

clearly establish that the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent."[181]   The central issue before the Court is legal causation, and whether McKey has alleged sufficient facts to plausibly allege that Defendants caused her prosecution.

The Fifth Circuit has recognized that under Louisiana law, merely reporting an individual to law enforcement for a suspected crime may cause that individual's prosecution if, after reporting the crime, there is no subsequent police investigation.[182]   If, however, a report of suspicious conduct is followed by an independent investigation by law enforcement, "the chain of causation between that initial report and the ultimate prosecution may be broken; that is to say, merely reporting the crime may not satisfy the requirement that the defendant have *caused* the prosecution."[183]   "However, there are cases in which there may not be enough of an intervening police investigation to break the chain of causation."[184]   As explained by the Fifth Circuit, "[I]n order to break the chain of causation, law enforcement's investigation must be independent of any individual suspicions."[185]   By way of example, the Fifth Circuit pointed to the Louisiana appellate court decision in *Adams v. Harrah's Bossier City Investment Co., LLC*, where the court held that a police officer's viewing of security footage, even with the assistance of the defendants, was

---

[181] *Kennedy*, 2005-1418, 935 So.2d at 690 n.20 (citing *Johnson v. Pearce*, 313 So.2d 812, 816 (La. 1975)); *See*, *James v. Woods*, 899 F.3d 404, 408-09 (5th Cir. 2018) (quoting *Kennedy*, *supra*).

[182] *James*, 899 F.3d at 409 (citing *Craig v. Carter*, 30,625 (La. App. 2 Cir. 9/23/98), 718 So.2d 1068, 1070-71).

[183] *James*, 899 F.3d at 409 (citing *LeBlanc v. Pynes*, 46,393 (La. App. 2 Cir. 7/13/11), 69 So.3d 1273, 1281) (emphasis in original).

[184] *Republic Fire & Cas. Insur. Co. v. Charles*, Civ. A. No. 17-5967, 2018 WL 310378, at *3 (E.D. La. Jan. 5, 2018) (citing *Craig*, 30,625, 718 S.2d at 1070).

[185] *James*, 899 F.3d at 409.

a sufficiently independent investigation to break the chain of causation because the defendant' involvement did not rise to such a level as to prevent the police investigation from being independent of defendants' own suspicions.[186]

The Court finds that Lt. Dubus conducted an independent investigation that broke the chain of causation between the complaint to the police and McKey's criminal prosecution notwithstanding August's and Houston's involvement in the investigation. Specifically, the allegations in the Complaint are insufficient to show that McKey's arrest and prosecution were based solely on the information provided by August and Houston. As Defendants point out, McKey alleges that Lt. Dubus met with August, Houston, *and* Edward Sims, the Library's IT Director, as part of his investigation.[187] The Complaint is devoid of any allegation regarding the information provided by Sims to Lt. Dubus or the extent of Sims' participation in the investigation. As previously mentioned, McKey only briefly mentions the accusations made by Houston and August to the police, alleging that Houston and August accused her of stealing Library documents. Elsewhere in the Complaint, however, McKey alleges that the "purported theory of the prosecution" in her criminal case was that she had "deleted certain computer files from the computer that she was assigned and had moved them to a recycle bin."[188] Taken together, these allegations suggest that Lt. Dubus spoke to Sims in connection with McKey's alleged deletion of computer files from her work computer which, according to McKey, was not mentioned by August or

---

[186] *Id.* (quoting *Adams*, 41,468 (La. App. 1 Cir. 1/10/07), 948 So.2d 317, 320).
[187] R. Doc. 1 in *McKey II,* at ¶ 11.
[188] *Id*. at ¶¶ 10 & 24.

Houston in their complaint to the police.  Thus, unlike the cases relied upon by

McKey,[189] this is not a case where McKey's arrest stemmed solely from Lt. Dubus'

reliance upon Houston's and August's accusations with only a limited investigation

into their veracity.[190]

The Court likewise finds that August's and Houston's involvement in the

investigation did not rise to such a level as to prevent Lt. Dubus' investigation from

being independent of their suspicions regarding McKey.[191]  The Court recognizes that

McKey alleges in the Complaint that Houston conducted her own legal research and

provided it to "the District Attorney's Office or the Sheriff's Office, resulting in the

original bill of information being filed against the Plaintiff by the District Attorney's

office."[192]  Setting aside the conclusory nature of this assertion, even if the Court

accepted the allegation as true and viewed it in the light most favorable to McKey, it

does not suggest that Lt. Dubus received or reviewed Houston's research during his

subsequent investigation.  The Court further finds that McKey's own allegations in

---

[189] *See*, R. Doc. 120 at pp. 20-21 (citing *Craig v. Carter*, 30,625 (La. App. 2 Cir. 9/23/98), 718 So.2d 1068; *LeBlanc v. Pynes*, 46,393 (La. App. 2 Cir. 7/13/11), 69 So.3d 1273).

[190] The Court notes that McKey alleges, as part of her § 1983 due process claim, that Defendants lost or destroyed "the notes of the Library employee, Mr. Edward Sims, who investigated the criminal accusations against the Plaintiff at the request of Defendants Houston and August," and that, "Mr. Sims conducted this purported criminal investigation even though he was not an employee of the Sheriff's Office, or the District Attorney's Office, and was not trained to conduct criminal investigations." R. Doc. 1 in *McKey II*, at ¶ 34(a) & (b).  McKey, however, never alleges that the results of any investigation conducted by Sims were provided to Lt. Dubus or to the District Attorney's Office.  Thus, even accepting these allegations as true and viewing them in the light most favorable to McKey, they do not support McKey's contention that Lt. Dubus' investigation was based solely upon the allegations by August and Houston.  *See,* R. Doc. 120 at pp. 21-22 ("All of the information obtained by officers in the instant case was provided by the Defendants.").

[191] *See, Adams v. Harrah's Bossier City Inv. Co., LLC*, 41,468 (La. App. 2 Cir. 1/10/07), 948 So.2d 317, 320 (concluding that even if Harrah's security reviewed the surveillance video with police officers and pointed out what they believed was the criminal act, "this involvement does not rise to such a level as to prevent the police investigation from being independent of Harrah's own suspicions.  As such, the independent investigation by the police breaks any legal causation.").

[192] R. Doc. 1 in *McKey II*, at ¶ 19(k).

her Complaint suggest that Houston and August did not provide false information to the police.  In the Complaint, McKey alleges that August and Houston reported "false" information that "Plaintiff had stolen documents belonging to the Library."[193] McKey, however, subsequently admits that she *did* take Library documents, alleging that she was arrested even though, "As was well known to the Defendants Houston and August, the Plaintiff had on May 13, 2015 at 10:00 a.m. *returned* all library documents that had been requested by Defendant August."[194]  These allegations do not support an inference that Houston and August "maliciously mislead or intentionally provided false information to the intermediary."[195]

The Court further finds the fact that the criminal charges against McKey were ultimately dismissed does not necessarily result in an inference that August or Houston intentionally provided false information to law enforcement.[196]  "Rather this allegation states only a threadbare legal conclusion as one of the elements of a malicious prosecution claim requires a 'bona fide termination in favor of the present plaintiff' with a lack of probable cause."[197]  According to the Complaint, the judge in McKey's criminal proceeding determined there was no probable cause for the 53 felony counts against her on November 8, 2017, and the District Attorney dismissed with prejudice via *nolle prosequi* all charges against McKey on December 12, 2018.[198] The Court finds these facts support the third and fourth elements of a malicious

---

[193] R. Doc. 1 in *McKey II*, at ¶ 10.

[194] *Id.* at ¶ 15 (emphasis added).

[195] *Republic Fire & Cas. Insur. Co. v. Charles*, Civ. A. No. 17-5967, 2018 WL 310378, at *4 (E.D. La. Jan. 5, 2018).

[196] *Id.,* Civ. A. No. 17-5967, 2018 WL 310378 at *5.

[197] *Id.*

[198] R. Doc. 1 in *McKey II*, at ¶¶ 27 & 29.

prosecution claim (bona fide termination in favor of the plaintiff and absence of probable cause for such proceeding), but they do not give rise to an inference that the information provided by Houston and August to law enforcement was false or misleading.

Based on the foregoing analysis, it is clear to the Court that McKey's arrest and subsequent criminal prosecution resulted from an independent investigation conducted by Lt. Dubus, which broke the chain of causation between August's and Houston's reporting to the police and McKey's arrest. As such, McKey has failed to allege a plausible claim for malicious prosecution against Defendants, and the claim must be dismissed.

### D. Leave to Amend is Denied.

In her Opposition brief, McKey requests leave to amend her claim if the Court "perceives any deficiencies in the complaint."[199] While the Court will "freely give leave [to amend] when justice so requires,"[200] leave to amend "is by no means automatic."[201] In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[202]

---

[199] R. Doc. 120 at p. 24.
[200] Fed. R. Civ. P. 15(a).
[201] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).
[202] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).

The Court denies McKey's request to amend her Complaint, finding that it would cause undue delay in this matter.  McKey filed her Complaint on April 3, 2019 and Defendants filed the instant Motion to Dismiss on June 10, 2019.[203]  The case was subsequently consolidated with McKey's 2016 lawsuit on July 25, 2019.[204]  The Court held a Status Conference with counsel on January 30, 2020, during which the Court discussed with counsel the instant Motion to Dismiss.[205]   During the conference, which lasted an hour, the Court gave counsel an opportunity to present additional arguments in support of their respective positions.  Counsel for both sides seized the opportunity and went into great detail regarding the arguments contained in their briefs.  The Court asked detailed questions of both counsel, during which the Court *repeatedly* expressed doubt regarding the sufficiency of McKey's allegations of malicious prosecution, which is the foundation for all of the claims asserted in the Complaint.

The lengthy discussion of the Motion to Dismiss during the January 30, 2020 Status Conference should have put McKey's counsel on notice that the Court agreed with several arguments raised by Defendants, as the Court pointed out several deficiencies in McKey's allegations.  Despite being afforded the opportunity to hear how the Court was leaning with respect to the instant Motion to Dismiss, McKey has never sought to amend her Complaint.  The Court notes that 18 months have now passed since that January 30, 2020 Status Conference, during which McKey could

---

[203] *See*, R. Docs. 1 and 17 in *McKey II*.
[204] *See*, R. Doc. 20 in *McKey II*.
[205] R. Doc. 176.

have moved to amend her Complaint.  McKey, however, made the deliberate choice not to do so.  Now, after several continuances, this matter is set for a jury trial on August 23, 2021.  Allowing McKey leave to amend on the eve of trial would necessarily require a continuance of the trial date, further prolonging this litigation and increasing the costs to the litigants.  To avoid further undue delay of this matter, the Court denies McKey's request for leave to amend her Complaint.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Motion to Dismiss[206] is **GRANTED.**  All of Susan Dillard McKey's claims asserted against Tammy Houston, Roberta Zeno August, and the St. John the Baptist Parish Library Board in Civ. A. No. 19-8033 are **DISMISSED WITH PREJUDICE**, and that case is hereby **DISMISSED.**

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment on All Claims in Civil Action No. 19-08033[207] is **DENIED as moot.**

New Orleans, Louisiana, August 13, 2021.

**WENDY B. VITTER**
**United States District Judge**

---

[206] R. Doc. 119.
[207] R. Doc. 145.