UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SUSAN DILLARD MCKEY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-13642-WBV-MBN** |
| **ROBERTA ZENO AUGUST, ET AL.** | **SECTION: D (5)** |

### ORDER AND REASONS

Before the Court is a Motion For Summary Judgement to Dismiss Plaintiff's Breach of Contract Claim, filed by Roberto Zeno August and the St. John the Baptist Parish Library Board (collectively, "Defendants").[1] Susan Dillard McKey opposes the Motion,[2] and Defendants have filed a Reply.[3] After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED.**

### I.    FACTUAL AND PROCEDURAL BACKGROUND[4]

This case involves a civil rights lawsuit filed by Susan Dillard McKey, a former employee of the St. John the Baptist Parish Library (the "Library"), who alleges reverse racial discrimination and deprivation of continued family health insurance coverage without due process of law.[5] In her original Complaint, McKey asserts three causes of action: (1) a claim under 42 U.S.C. § 1981(a) against August, in her individual capacity, for hostile work environment and for discriminatory demotion

---

[1] R. Doc. 146.
[2] R. Doc. 154.
[3] R. Doc. 171.
[4] In the interest of judicial economy, and because the factual background of this case was extensively detailed in the Court's prior Orders (R. Docs. 40 & 63), the Court will limit its recitation of the factual and procedural background to matters relevant to the instant Motion
[5] *See*, R. Docs. 1 & 44.

Case 2:16-cv-13642-WBV-MBN   Document 216   Filed 08/16/21   Page 2 of 12

and termination; (2) a claim for "breach of contract and denial of due process" against the Library Board; and (3) a claim for false arrest/imprisonment against St. John the Baptist Sheriff's Office.[6] McKey's claim against the Sheriff's Office was subsequently dismissed by the Court on October 3, 2006.[7] Thereafter, McKey amended her Complaint to allege facts regarding her purported property interest in the retirement benefits set forth in the Library Board's Policies and Procedural Manual (the "Policy Manual") and to allege a breach of contract claim against August and the Library Board based upon the divesture of her "vested rights" in the continued health insurance benefits set forth in the Policy Manual, a claim that McKey had previously abandoned.[8]

On January 7, 2020, Defendants filed the instant Motion, seeking summary judgment regarding McKey's breach of contract claims.[9] Defendants assert that they are entitled to dismissal because McKey did not have an employment contract with either August or the Library Board and, even if she had an employment contract with the Library Board, Defendants did not breach it based on the clear and unambiguous terms of the Policy Manual.[10] Defendants assert that at all material times, McKey's

---

[6] R. Doc. 1 at ¶¶ 54-77.
[7] R. Doc. 23.
[8] R. Doc. 44. This Court previously recognized the abandonment of these claims in its July 6, 2017 Order and Reasons. R. Doc. 63 at pp. 2-3 ("In her amended complaint, McKey made allegations against Ms. August, in addition to the Library Board, for the denial of a right to continuing health insurance benefits; she also asserted a claim against both defendants for violations of Louisiana state contracts law (a claim she had previously abandoned).") McKey acknowledges in her Opposition brief that the state law breach of contract claims were previously abandoned. R. Doc. 154 at p. 11 ("she also asserted a claim against both defendants for violations of Louisiana state contracts law (a claim she had previously abandoned).").
[9] R. Doc. 146.
[10] *Id.* at ¶ 14.

employment with the Library was at-will. Defendants claim that the source of McKey's claim for continuing family health insurance derives from the Policy Manual which, at the time of her termination in 2015, provided the following:

> 6. The Library participates in the health, dental and life insurance program offered by the Parish Government for all regular full time employees and their dependents.
> 7. The Insurance benefit is paid at a rate of 100% by the Library for regular full time employees and for retired employees who qualify for retirement under the Parochial Employees Retirement System.
> 8. The retiring employee must notify the Administrative Librarian six (6) weeks before the anticipated date of retirement if he/she elects to retain the insurance offered by the Library.[11]

Defendants argue that the Policy Manual did not create an employment contract with McKey, and that it expressly disclaimed that it was an employment contract, providing that:

> **Not a Contract:** This manual is designed to acquaint the employee with working for the St. John the Baptist Parish Library and to provide information on our current employment practices. Neither this manual nor any of the policies and practices included is intended as an employment contract (express or implied) and accordingly should not be considered as such. Nothing in this manual should be relied upon as a guarantee for certain privileges, working conditions or continued employment.[12]

Defendants assert that McKey acknowledged that she signed an Acknowledgment of the Policy Manual, had access to the Policy Manual, and familiarized herself with the applicable policies.[13] Defendants argue that Louisiana courts consistently reject the notion that employee handbooks and policy manuals form employment contracts,

---

[11] R. Doc. 146-2 at pp. 3-4 (*quoting* R. Doc. 146-1 at p. 12).
[12] R. Doc. 146-2 at p. 4 (*quoting* R. Doc. 146-1 at p. 9).
[13] R. Doc. 146-2 at p. 4 (citations omitted).

especially where, as in this case, they expressly state that they are not employment contracts and are merely informational statements of current employment policies.[14]

McKey argues that she had a contractual entitlement to her continuing health care coverage as a result of the Library's Board's Policy Manual, and that her property interest in retirement benefits, including continued health care coverage, originates from Louisiana Constitution Article 10, § 29(B).[15] According to that provision, "[m]embership in any retirement system of the state or of a political subdivision thereof shall be a ***contractual relationship*** between employee and employer, and the state shall ***guarantee benefits*** payable to a member of a state retirement system or retiree or to his lawful beneficiary upon his death."[16] McKey argues that she met all of the eligibility criteria for the vesting of retirement benefits through the Deferred Retirement Option Plan ("DROP") and, as such, had an entitlement to the promised benefit of continued health care coverage.[17] As such, McKey claims her interest in continuing health care coverage "is clearly a sufficient property interest to invoke due process protections."[18] McKey then recounts how the Court previously granted Defendants' motion to dismiss her amended claim based on her purported Fourteenth Amendment right to continued health insurance benefits,[19] but later rescinded the Order and denied Defendants' motion to dismiss, concluding that McKey had stated a plausible § 1983 claim to continuing health insurance

---

[14] *Id*. at pp. 2, 8-11.
[15] R. Doc. 154 at pp. 6-7 (citing authority).
[16] *Id*. (*quoting* LA. CONST. Art. 10, § 29(B)) (emphasis added by McKey).
[17] R. Doc. 154 at p. 8 (citing *Smith v. Bd. of Trustees of Louisiana Sch. Emp. Ret. Sys.*, 398 So.2d 1045 (La. 1981)).
[18] R. Doc. 154 at p. 9.
[19] R. Doc. 154 at pp. 11-12; *See*, R. Doc. 49.

benefits as a retired employee.[20] McKey argues that the "law of the case" doctrine applies here, and that the instant Motion should be denied because this Court already rejected the same arguments raised by Defendants, namely, that McKey is not retired because she was terminated.[21] McKey contends that because there is evidence that she enrolled in the DROP retirement plan on September 23, 2013, there are genuine issues of fact as to whether she was "retired," thus precluding summary judgment.[22] McKey further asserts that her claim against August for continued health insurance coverage should not be dismissed because she has alleged that August terminated her health insurance benefits and, therefore, violated her constitutional rights.[23]

In response, Defendants assert that McKey completely misunderstands the arguments raised in their Motion, which seeks dismissal of her state law breach of contract claim.[24] Defendants argue that whether McKey had a vested property interest in continuing health insurance is a separate claim and analysis from her state law contract claims. Defendants point out that McKey failed to address a single issue briefed in their Motion, and that the Court should grant summary judgment on that basis alone. Defendants argue that McKey has presented no law or evidence to demonstrate that she had a valid employment contract with either August or the Library Board through the Policy Manual, or that the Policy Manual grants her a contractual right to continuing health insurance.[25] Defendants maintain that

---

[20] R. Doc. 154 at p. 12 (*citing* R. Doc. 63).
[21] R. Doc. 154 at pp. 12-13 (citing authority).
[22] R. Doc. 154 at p. 13.
[23] R. Doc. 154 at pp. 13-14.
[24] R. Doc. 171 at p. 1.
[25] R. Doc. 171 at pp. 2-4.

McKey's entitlement to continuing health insurance benefits starts and ends with the Policy Manual, and that she is not entitled to those benefits as a matter of Louisiana contract law.[26]

## II.   LEGAL STANDARD

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[27] When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[28] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[29] Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[30]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[31] The nonmoving party can then defeat summary judgment by either submitting evidence

---

[26] *Id.* at p. 6 (footnote omitted).
[27] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).
[28] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).
[29] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[30] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[31] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).

sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[32]  If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[33]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[34]

### III. ANALYSIS

Contrary to McKey's assertions, the issue before the Court is not whether she has sufficiently alleged a property interest in the continued health insurance coverage set forth in the Library's Policy Manual.  In fact, that question is before the Court in another motion currently pending before the Court.[35]  Instead, as Defendants aptly point out in their Reply brief, the sole issue before the Court is whether Defendants are entitled to judgment as a matter of law on McKey's breach of contract claims that are based upon a purported breach of the Policy Manual provisions.

---

[32] *Id.* at 1265.
[33] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
[34] *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (*quoting* Fed. R. Civ. P. 56(e)).
[35] *See*, R. Doc. 71; R. Doc. 71-1 at pp. 18-24.

In her original claim for "breach of contract and denial of due process" against the Library Board, McKey alleged that, "At all times relevant hereto, the Plaintiff had a valid and enforceable employment contract with the St. John the Baptist Parish Library," and that, "Per the terms of the Plaintiff's employment contract, she was eligible for retirement and had fully vested in her retirement benefits from St. John the Baptist Parish."[36] In her First Amended Complaint, McKey amended her Complaint to include the following allegation:

> However, based on their arbitrary and unlawful interpretation of the Policies and Procedures Manual, the Defendants attempted to divest the Plaintiff's vested rights in the continued health insurance benefits which had been contractually promised to the Plaintiff and other employees, dependents and retirees by the St. John the Baptist Library Board. This action by the Defendants violated Louisiana state contracts law, the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, § 2 of the Louisiana Constitution.[37]

The First Amended Complaint also adds a claim for $200,000 in uncovered medical expenses based upon McKey's loss of her health insurance benefits.[38]

At the outset, the Court notes that McKey does not allege that she was employed by the Library for a fixed term, or that she had a written employment contract. Instead, Plaintiff specifies in her Response to Defendant's [sic] Statement of Undisputed Material Facts in Support of Motion for Summary Judgment that, "At all times relevant hereto, Plaintiff had a valid contact of employment with Defendant Board as a matter of law as the Board promised Plaintiff health insurance benefits

---

[36] R. Doc. 1 at ¶¶ 70 & 71.
[37] R. Doc. 44 at p. 3.
[38] *Id.* at pp. 3-4.

and Plaintiff accepted these benefits."[39]  The evidence before the Court shows that McKey testified during a deposition that she was an at-will employee of the Library.[40] McKey, however, seems to allege that Defendants breached the Library's Policy Manual by discontinuing her family health insurance when she was terminated from employment.  As Defendants point out, however, courts applying Louisiana law have consistently held that employee manuals and handbooks do not create contractual rights, especially where, as here, the Policy Manual contains a disclaimer that it is not a contract.  In *Wallace v. Shreve Memorial Library*, the Fifth Circuit, applying Louisiana law, rejected the plaintiff's argument that the library's employment manual created a contract that provided that she would only be fired for cause.[41] Relying on Louisiana jurisprudence, the Fifth Circuit held that Louisiana courts "have found that employment manuals are not agreements between two parties."[42] The Fifth Circuit pointed out that Louisiana courts have distinguished manuals on the basis that their policies were not a bargained for condition of employment, but merely a unilateral expression of company policies and procedures.[43]  The *Wallace* court concluded that the employment manual at issue was insufficient to create contractual rights even though it did not contain a disclaimer stating that it was not a contract.[44]  In doing so, the Fifth Circuit noted that, "If there were such a disclaimer,

---

[39] R. Doc. 154-1 at ¶ 4 (citing *Knecht v. Bd. of Trustees For State Colleges & Univs. And Northwestern State Univ.*, 591 So.2d 690, 695 (La. 1991)).
[40] R. Doc. 146-6 at p. 2.
[41] 79 F.3d 427, 430-31 (5th Cir. 1996).
[42] *Id.* (citing *Keller v. Sisters of Charity*, 597 So.2d 1113, 1116 (La. App. 2 Cir. 1992); *Thebner v. Xerox Corp.* 480 So.2d 454, 457 (La. App. 3 Cir. 1985)).
[43] *Wallace*, 79 F.3d at 430 (quoting *Leger v. Tyson Foods, Inc.*, 670 So.2d 397, 401-02 (La. App. 3 Cir. 1996)) (quotation marks omitted).
[44] 79 F.3d at 431.

our job of course would be easier. However, Louisiana courts have found employment manuals not to be contracts even without disclaimers (and we have found no cases where the absence of a disclaimer made the manual a contract)."[45]

Other courts applying Louisiana law have reached the same conclusion. The Middle District of Louisiana has held that an arbitration clause contained in an employee handbook did not constitute a contract under Louisiana law, recognizing that, "Louisiana state courts have overwhelmingly rejected employment manuals as the source of contractual obligations," and that, "Federal courts have followed the same rule."[46] In *Adams v. Autozoners, Inc.*, another Section of this Court similarly rejected an employee's breach of contract claim based upon the violation of the terms of an employee handbook.[47] In doing so, this Court found "no Louisiana jurisprudence holding that an employee manual creates a contract which can modify an at-will employment relationship," and that, "a number of state and federal cases applying Louisiana law have concluded that employment manuals, policies, and grievance procedures did not confer contractual rights upon employees, nor did they create any exceptions to the employment at-will doctrine."[48] Louisiana appellate courts have reached the same conclusion.[49] Louisiana courts have also found that manuals are merely a unilateral expression of company policies and procedures, and that any

---

[45] *Wallace*, 79 F.3d at 431 (citing *Keller*, 597 So.2d at 1116).
[46] *Walker v. Air Liquide America Corp.*, 113 F. Supp. 2d 983, 985 (M.D. La. 2000).
[47] *Adams v. Autozoners, Inc.*, Civ. A. No. 98-2336, 1999 WL 744039, at *5-6 (E.D. La. Sept. 23, 1999).
[48] *Id.*, Civ. A. No. 98-2336, 1999 WL 744039 at *6 (citing *Wallace*, 79 F.3d at 430).
[49] *See, Square v. Hampton*, 2013-1680 (La. App. 4 Cir. 6/4/14), 144 So.3d 88, 98-99 (citing *Mix v. The Univ. of New Orleans*, 609 So.2d 958, 964 (La. App. 4 Cir. 1992); *Leger v. Tyson Foods, Inc.*, 95-1055 (La. App. 3 Cir. 1/31/96), 670 So.2d 397, 401-02; *Wall v. Tulane University*, 499 So.2d 375, 375-76 (La. App. 4 Cir. 1986).

benefits conferred by such manuals are merely gratuitous and not binding on the employer.[50] As noted by one Louisiana court, "The contention that a handbook creates a contract between an otherwise 'at will' employee and his employer is neither novel nor, in this jurisdiction, meritorious."[51]

McKey does not address any of the foregoing authority in her Opposition brief, nor does she address any of the arguments raised by Defendants in their Motion for Summary Judgment. Similar to the plaintiffs in the cases cited above, McKey has not offered any evidence that she bargained for the provisions in the Policy Manual as a condition of her employment with the Library.[52] As such, the Court finds that the Policy Manual is merely a unilateral statement by the Library Board of its policies and procedures and does not does confer contractual rights upon McKey.[53] Moreover, the Policy Manual contains an explicit disclaimer stating that it is not a contract:

> **Not a Contract:** This manual is designed to acquaint the employee with working for the St. John the Baptist Parish Library and to provide information on our current employment practices. Neither this manual nor any of the policies and practices included is intended as an employment contract (express or implied) and accordingly should not be considered as such. Nothing in this manual should be relied upon as a

---

[50] *Leger*, 95-1055, 670 So.2d at 401-02; *Wall v. Tulane Univ.*, 499 So.2d 375, 375-76 (La. App. 4 Cir. 1986).
[51] *Stanton v. Tulane Univ. of Louisiana*, 2000-0403 (La. App. 4 Cir. 1/10/01), 777 So.2d 1242, 1250; *Square*, 2013-1680, 144 So.3d at 98 (quoting *Stanton, supra*).
[52] *Wallace*, 79 F.3d at 430 (citing *Leger v. Tyson Foods, Inc.*, 670 So.2d 397, 401-02 (La. Ct. App. 1996)). *See*, *Adams v. Autozoners, Inc.*, Civ. A. No. 98-2336, 1999 WL 744039, at *6 (E.D. La. Sept. 23, 1999).
[53] *Wallace*, 79 F.3d at 430 (quoting *Leger v. Tyson Foods, Inc.*, 670 So.2d 397, 401-02 (La. Ct. App. 1996)) (quotation marks omitted).

guarantee for certain privileges, working conditions or continued employment.[54]

Based upon this disclaimer, the Court finds that any violations of the Policy Manual cannot serve as the basis for McKey's breach of contract claim.[55] Accordingly, Defendants are entitled to judgment as a matter of law on McKey's breach of contract claims.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion For Summary Judgement to Dismiss Plaintiff's Breach of Contract Claim[56] is **GRANTED.** Susan Dillard McKey's breach of contract claims asserted against Roberta Zeno August and the St. John the Baptist Parish Library Board are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, August 16, 2021.

*Wendy B. Vitter*
**WENDY B. VITTER**
**United States District Judge**

---

[54] R. Doc. 146-2 at p. 4 (*quoting* R. Doc. 146-1 at p. 9).
[55] *Smith v. Bd. of Supervisors for the Univ. of Louisiana Sys.*, Civ. A. No. 13-5505, 2015 WL 10663156, at *9 (E.D. La. Dec. 11, 2015) (citing *Oller v. Roussel*, Civ. A. No. 11-02207, 2014 WL 1789655, at *1 (W.D. La. May 5, 2014)). *See*, *Wallace v. Shreve Mem. Library*, 79 F.3d 427, 431 (5th Cir. 1996) ("If there were such a disclaimer, our job of course would be easier.").
[56] R. Doc. 146.